(No. 41700.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* MARY B. KOSHIOL, Appellant.

*Opinion filed March 24, 1970.—Rehearing denied October 6, 1970.*

574

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago, (JAMES J. DOHERTY, Assistant Public Defender, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JOSEPH ROMANO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant, Mary B. Koshiol, was tried by a jury in the circuit court of Cook County on a two-count indictment charging aggravated battery and attempted murder of her

husband, John Koshiol. At the close of the State's evidence the aggravated battery charge was dismissed, but she was found guilty of "attempt murder" and sentenced to the Women's Prison at Dwight for a term of not less than 2 years nor more than 6 years. She now appeals from this conviction and sentence claiming that her constitutional rights were violated by an unlawful search and seizure at the apartment she and her husband jointly occupied, that the evidence was insufficient to prove her guilt, that the final argument of the prosecutor was prejudicial, and that the court erred in instructing the jury.

Defendant and her husband were married for 18 years and lived together with their four children in an apartment in Chicago. Mr. Koshiol testified that in September, 1965, he began suffering painful vomiting spells which continued periodically during the following months of that year and then recurred during the first three months of 1966. After three separate confinements in private hospitals failed to reveal the cause of his trouble he was transferred to a Veteran's Administration Hospital on March 8, 1966, where an expert in blood disorders diagnosed his illness as chronic arsenic intoxication. Suspicions were aroused that his wife was putting arsenic in his food when he recalled that on each confinement in the hospital his vomiting would stop and then reoccur when he returned home. When he vomited in the Veteran's Hospital on March 12 after drinking a milk shake which defendant had brought to him he was restricted to the hospital diet alone and all subsequent gifts of food or drink from his wife were turned over to the hospital for checking. From this time on his vomiting stopped. In the hospital check a number of items delivered to her husband by defendant proved negative for arsenic content, but toxicology experts testified that a milk shake delivered on April 5 contained 10 milligrams of arsenic trioxide, another delivered on April 15 contained 45.5 miligrams, and an orange delivered on April 21 contained 3.425 milligrams.

Defendant was arrested on May 24 in her husband's hospital room. On June 1, while defendant was in custody, her husband was released from the hospital for the day to arrange for a woman to take care of his children. His sister testified that she came to help and while removing defendant's clothes from a dresser drawer she found two bottles, one of which was later found to contain arsenic. She then searched further and found a syringe needle and another bottle in the bathroom which contained arsenic. Defendant's son also testified that he found a bottle in the kitchen pantry which was later determined to contain arsenic.

Defendant contends first that the rights against unreasonable search and seizure under the fourth amendment to the United States constitution are personal to the possessor and that a spouse should have no authority to bind an absent spouse by waiving a legal search warrant or consenting to an unauthorized search of premises jointly owned or occupied by both. She recognizes that the United States Supreme Court has never expressly ruled on this subject and that the long established rule in Illinois is contrary to her position. (*People* v. *Shambley,* 4 Ill.2d 38; *People* v. *Perroni,* 14 Ill.2d 581; *People* v. *Speice,* 23 Ill.2d 40; *People* v. *Stacey,* 25 Ill.2d 258; *People* v. *Palmer,* 26 Ill.2d 464; *People* v. *Palmer,* 31 Ill.2d 58; *People* v. *Haskell,* 41 Ill.2d 25.) However, she argues that we should reconsider the matter on the grounds that a personal right which can be waived by another either directly, or indirectly as an agent, thereby loses its personal status and the right itself would soon disappear. We disagree, particularly under the facts of this case. The husband was not acting as an agent of his wife, nor was he waiving his wife's right in permitting his sister to conduct a search of his own apartment in his presence. Rather, he was exercising his own personal right of possession and control to which he was entitled as a joint owner and occupant of the premises. To hold otherwise here would lead to the strange conclusion that the right

of the wife to conceal her efforts to kill her husband are paramount to and somehow must supersede her husband's equal right to protect himself by searching his own residence for the physical evidence of his wife's activities. Defendant cites no reason why such a search by her husband was unreasonable other than that his position was antagonistic to her and his whole attitude was contrary to her best interests. That he was antagonistic at this point is true, but it surely constitutes an anomalous argument under the circumstances. In any event, regardless of the alleged antagonism on the part of the husband, it neither depleted his right nor increased his wife's. Defendant makes one further argument that the rule as it now stands represents a challenge to the Judeo-Christian community at large because it discourages marriage and encourages immorality in that the right against unreasonable search under such rule is allegedly secure against a person's part-time paramour and is lost against a person's wedded partner. She asks if one of the prices of marriage is an abandonment of rights under the fourth amendment. We consider this argument entirely spurious. The right to search or to consent to a search is based on the right to the use or occupancy of the premises and not on the relationship of husband and wife as opposed to that of man and paramour.

For the reasons stated we find no reason to change our position with respect to the principle set forth in *People* v. *Shambley,* 4 Ill.2d 38, and we expressly reaffirm such principle and find that the search and seizure herein was both reasonable and lawful.

Next, defendant contends she was not proved guilty of the offense of attempt to murder because there was no evidence of a specific intent to take her husband's life, nor any evidence that the amount of arsenic in the food she brought him was sufficient to kill, and, further, since the charge of aggravated battery was dismissed it was logically and legally impossible to convict her of attempt to murder which

involved a second simultaneous specific intent. In answer to the last of these contentions attention need only be called to the fact that the trial court dismissed the aggravated battery charge for the reason that the first count of the indictment, charging aggravated battery, failed to allege that defendant intentionally or knowingly caused great bodily harm to another as required by statute (Ill. Rev. Stat. 1967, ch. 38, par. 12—4). To the contrary, the count charging attempt to murder did charge intent. Therefore, the dismissal of the first count had no effect on the second.

As to the question of the sufficiency of proof of specific intent the law is well settled that intent is a state of mind, and, if not admitted, can be shown by surrounding circumsances, and intent to take a life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. (*People* v. *Shields,* 6 Ill.2d 200.) Also, "Since every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one wilfully does an act, the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended." (*People* v. *Coolidge,* 26 Ill.2d 533, 537.) Here the evidence is clear that at first defendant's husband experienced his vomiting attacks only when residing at home and not when confined to the hospital, that his condition was eventually diagnosed as chronic arsenic intoxication, that arsenic was found in the home of defendant and her husband, that on three occasions defendant had visited him in the hospital and had given him two milkshakes and an orange, each of which contained arsenic trioxide varying in amounts from 3.425 milligrams to 45.5 milligrams. The conclusion from these facts, otherwise unexplained, is inescapable that defendant intended to kill her husband.

As to the question of the sufficiency of the arsenic to

kill, one expert testified that the dose a person could take each day without being fatal would be between one or two milligrams on a continuance basis. Section 8—4 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 8—4), that a person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. We find that the giving of three specific articles of food on separate occasions, containing arsenic, together with the reasonable inferences to be drawn from the other surrounding circumstances above set forth, are more than sufficient to constitute a substantial step toward the commission of the offense of murder.

Defendant next objects to two instructions given for the State. One instruction set forth the statutory definition of the crime of murder and then concluded with the statutory definition of the crime of attempt to the effect that a person commits the latter offense "when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." Defendant argues that it makes no sense to give a definitive instruction on murder in a case in which no one was killed, that it only tends to confuse and mislead the jury. To the contrary, it would seem utterly meaningless to instruct a jury on attempt to commit a "specific offense" without defining the specific offense alleged to have been committed. Such procedure would leave the jury entirely to its own devices in determining what specific offense the court was referring to in its definition of attempt as well as in determining whether the defendant had taken a substantial step towards its commission. We find no error in the instruction given.

The other instruction complained of is one stating that proof of motive is not required. Defendant admits that such an instruction is proper under prevailing law but argues that there is no valid reason for such an instruction, that it

only tends to confuse the jury since motive or lack of motive is not proof of guilt or innocence. She argues specifically that since it was brought out on cross-examination of defendant that there was a life insurance policy on her husband the instruction could mislead the jury into believing that this portion of the State's case could be inferred and need not be proved beyond a reasonable doubt. In support of her claim she cites the Committee on Illinois Pattern Instructions (I.P.I. Criminal No. 3.04) which suggests that a motive instruction may be improper in a case in which the prosecution introduced evidence of motive. We do not believe that under the circumstances of this case such instruction constituted error. If inability to discover a motive for a crime is not a basis for acquittal then it follows that an unsuccessful attempt to prove motive should likewise not be a controlling factor, and, in either instance, the jury is entitled to know that proof of motive is not essential to proof of guilt so as not to be misled otherwise. In any event, motive was merely one factor among many to be considered by the jury and we find that no prejudice to the defendant resulted from giving the disputed instructions.

Finally, we find that the prosecutor's final argument to the jury was not prejudicial to the defendant. While certain remarks may have been improper, though unobjected to in the trial court, nevertheless, in view of the clear and convincing evidence of the guilt of defendant we do not believe that the remarks could have influenced the result, or that the verdict could have been otherwise had the statements not been made. *People* v. *Naujokas,* 25 Ill.2d 32.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.