THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES FLEMING, Defendant-Appellant.

Third District   No. 75-228

Opinion filed September 30, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Robert A. Barnes, Jr., State's Attorney, of Lacon, for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial, defendant, Charles Fleming, was found guilty of aggravated battery and attempt murder. The trial court entered judgment on both verdicts, but sentenced defendant only on the attempt conviction, imposing a term of imprisonment of 4-12 years and ordering defendant to pay a fine of $500. On appeal, defendant contends that the evidence does not prove beyond a reasonable doubt that he acted with the requisite intent for the commission of the offenses and that the conviction for aggravated battery must be vacated, as it is based on the same act as the attempt conviction.

The State's evidence showed that at approximately 1:30 p.m. on February 18, 1975, defendant arrived at a party at the Shreeve's residence in Lacon, Illinois. During the afternoon, defendant and the other people present drank beer, and some of the partygoers took capsules of quaalude, a sedative. Defendant left the party in either late afternoon or early evening and, returning around 9 p.m., immediately attacked and began fighting with Bruce West. Other persons, including Randy Bean, intervened in the fight, which resulted in defendant and Randy Bean fighting outside until Bean broke off the fight and went into the house. Witnesses to this incident testified that defendant appeared intoxicated although he was able to stand and walk, and, after the fight, drove away in his automobile.

Defendant next arrived at the Lariat Lounge in Lacon at 10:30 p.m., and met a friend, Thomas Pottinger. The two men drove back to the Shreeve house in defendant's automobile, with defendant driving. Defendant, armed with a shotgun, entered the house and began talking with Bean, who was sitting in the living room. Pottinger testified that he heard a shot and saw that Bean was bleeding.

Paula Caplinger testified that after defendant entered the house, she heard Bean say, "Don't aim the gun at me, Chuck,* * *." Then she heard a shot, although she did not actually see the shooting. She also heard defendant say either "Say it's an accident and I'll take you to the hospital," or "It was an accident; I'll take you to the hospital." A few minutes later, she heard another shot and saw that defendant had shot himself.

Jesse Shreeves testified that defendant was holding the shotgun, which was a single shot weapon requiring a manual cock, in both hands and moved it from his right hand to his left. In so doing, the barrel came down and the gun discharged. Immediately after the shooting, Shreeves heard defendant say, "Let me take you to the hospital, I didn't mean to do it."

Randy Bean testified that he was sitting in the living room when defendant entered. Defendant, who appeared "pretty drunk," stood 10 to 12 feet away, and holding the gun to his shoulder, pointed the gun at Bean. Bean raised his hands, then lowered them and told defendant not to shoot. Defendant mumbled something unintelligible and shot Bean, striking him in the right shoulder and upper chest.

A doctor who was called to the Shreeve residence examined defendant, who was lying on the floor. The doctor testified that defendant was rational and coherent, and expressed concern over whether he was going to live or die. The doctor noticed alcohol on the premises, but did not detect an odor of alcohol on defendant.

Defendant testified that prior to his first arrival at the party he drank about 12 cans of beer. During the afternoon he consumed another 12 cans of beer and 10 quaaludes. He recalled leaving the party in late afternoon to drive to the Lariat Lounge, but had no recollection of events after that time. The shotgun belonged to him and had been in a closet at his home.

Defendant first contends that the State failed to prove beyond a reasonable doubt that he was not so intoxicated and drugged as to be incapable of forming the requisite intent.

■■ Voluntary intoxication is an affirmative defense if it negates the existence of a mental state which is an element of the offense. (Criminal Code, section 6—3(a) (Ill. Rev. Stat. 1975, ch. 38, par. 6—3(a)).) The intoxication must be so extreme as to suspend entirely the power of reason and render defendant incapable of forming the specific intent required for the offense. *People v. Tillman* (1963), 26 Ill. 2d 552, 187 N.E.2d 731; *People v. Hunter* (1st Dist. 1973), 14 Ill. App. 3d 879, 303 N.E.2d 482.

Here, in addition to defendant's testimony regarding the quantity of beer and quaaludes he had consumed, the jury could consider the length of time over which the consumption took place and the amount of time between the drinking at the party and the shooting. The evidence also showed that defendant was able to walk and drive his automobile to his home after the fight with Bean in order to obtain his shotgun, then drive to the Lariat Lounge and back to the Shreeve residence. Moreover, the doctor who examined defendant after the shooting testified that he appeared rational and coherent.

The weight to be given the testimony relating to intoxication is peculiarly within the province of the jury and, upon review of the record, we believe that there is sufficient evidence by which the jury could find that defendant was not so intoxicated as to negate the requisite intent. See *People v. Pickerel* (3d Dist. 1975), 32 Ill. App. 3d 822, 336 N.E.2d 778; *People v. Johnson* (3d Dist. 1975), 32 Ill. App. 3d 36, 335 N.E.2d 144.

Defendant also contends that the evidence is insufficient to prove that

he shot Bean with the intent required for attempt murder, relying on the testimony of Shreeves that the gun discharged while defendant was moving it from one hand to the next and testimony that, after the shooting, defendant stated that the shooting was an accident.

■■ In order to prove defendant guilty of attempt murder, the State must show that defendant committed an act which constitutes a substantial step toward the commission of a murder and that defendant acted with intent to kill or do great bodily harm to Bean, or had knowledge that his acts created a strong probability of death or great bodily harm to Bean. (Criminal Code, sections 8—4(a), 9—1(a)(1), (2) (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(a), 9—1(a)(1), (2)).) Intent can be inferred from the surrounding facts and circumstances and from the natural and probable consequences of the accused's acts. *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314; *People v. Lyons* (5th Dist. 1974), 26 Ill. App. 3d 193, 324 N.E.2d 677, *cert. denied,* ___U.S. ___ , ___L. Ed. 2d___, 96 S. Ct. 570.

Randy Bean testified that defendant stood a short distance away and, holding the shotgun to his shoulder pointed the shotgun at Bean and shot. Paula Caplinger testified that Bean stated, "Don't point the gun at me * * *," just prior to the shooting, which corroborates Bean's testimony. The jury could also consider evidence that defendant had fought with Bean, who broke off the fight, then left the party and returned to confront Bean with the shotgun.

The jury may always believe as much or as little as they please of a witness' testimony. (*People v. Smith* (1st Dist. 1972), 7 Ill. App. 3d 912, 288 N.E.2d 901.) The jury's province is to sort out conflicting evidence, determine credibility and weigh testimony, and the verdict will not be disturbed unless so unsatisfactory as to leave a reasonable doubt as to the accused's guilt. (*People v. Jennings* (1st Dist. 1976), 37 Ill. App. 3d 982, 347 N.E.2d 421; *People v. Holverson* (2d Dist. 1975), 32 Ill. App. 3d 459, 336 N.E.2d 88.) We believe that there was sufficient evidence to show that the shooting was intentional and that at the time of the shooting, defendant acted with the requisite intent.

● 3 Defendant lastly contends that the conviction for aggravated battery must be vacated. The State properly concedes this issue, as both offenses arose from the single act of shooting Randy Bean. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) Accordingly, the defendant's conviction for aggravated battery is vacated.

The judgments of conviction of the Circuit Court of Marshall County are affirmed in part, vacated in part.

Affirmed in part; vacated in part.

ALLOY, P. J., and BARRY, J., concur.