THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONARD MYERS, Defendant-Appellant.

Third District    No. 79-121

Opinion filed May 9, 1980.

---

1074

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Following a jury trial in which the defendant, Leonard Myers, was found guilty of armed violence, armed robbery, aggravated kidnapping and attempt murder, he was sentenced to four concurrent terms of imprisonment of 20 years each. At the trial, Melvin Schmidt and Kevin Jensen testified against the defendant.

According to these two prosecution witnesses, at approximately 10:30 p.m. on June 15, 1978, Schmidt, Jensen, and Rick Landeen left White Sox Park in Jensen's 1970 Thunderbird. On the way home Jensen picked up three black men along the highway. Both Schmidt and Jensen identified the defendant as one of these men.

Jensen drove Rick Landeen home, where the defendant got out of the car momentarily to find a hose for siphoning gasoline. When they departed from the Landeen house, Jensen and Schmidt were in the front seat, and the three black men were in the rear, with Myers sitting behind Schmidt and Elijah Barfield sitting behind Jensen. Shortly thereafter

Jensen pulled the car into the driveway of a house, and he and the black men siphoned some gasoline from several automobiles, which they put into Jensen's car. Eventually, however, gasoline ran low, and Jensen refused to take the three black men any farther.

At this point the defendant became angry, and held a long, machete knife to Schmidt's throat, saying something to the effect: "You fucking honkies are going to take us any damn place we want to go or else I am going to kill you." When Schmidt grabbed the defendant's wrist, the defendant stated something to the effect: "Get your damn hands down or I am going to cut your head off." When Schmidt took his hands down, the defendant started yanking and twisting the knife into Schmidt.

Barfield held a gun to Jensen's head while the third black man, Jerry DeLooch, did nothing throughout the entire incident. As they rode along the highway for a period of eight to 15 minutes, the defendant applied continuous pressure on the knife at Schmidt's throat except for one occasion when he "flicked" it at Jensen for turning on a map light. Schmidt tried to talk the defendant into putting the knife down, and he considered overpowering the defendant, but every time Schmidt did or said anything, the defendant just yanked harder on the knife. According to Schmidt, the defendant was constantly working the knife into Schmidt's throat. As a result, the bleeding from Schmidt's throat became heavier and heavier, and air whistled through his windpipe. Because of the noises which Schmidt was making, the defendant ordered Barfield to "knock out" Schmidt. Barfield struck Schmidt five times, apparently with the gun. The car then exited the interstate at Route 30 and shortly thereafter ran out of gas.

The defendant finally put down the knife when the car stopped, after which he relieved Schmidt of his wallet and pulled him from the car. Before leaving the defendant also took Jensen's wallet.

After the black men left Jensen got help for his friend by jumping in front of an oncoming car. According to the State's medical evidence, Schmidt suffered a 4½ inch cut across his neck which at its deepest point was three-quarters of an inch deep. The doctor described this as a serious injury because there was a risk of blood being aspirated into the lungs, but the carotid artery had not been penetrated.

The defendant was found walking by himself down a road at about 5 a.m. and was arrested. Barfield and DeLooch were likewise picked up along the road about 20 minutes later, and Barfield's gun was recovered.

About a week after the defendant was arrested he was identified in a lineup by Melvin Schmidt. The defendant was further linked to the charged offenses by evidence that blood stains matching Schmidt's blood type (O-negative) were on his pants, and by evidence that his fingerprints were found in Jensen's automobile.

Only two witnesses appeared for the defense, Richard Landeen and Robert M. Gray, one of the defense attorneys. Landeen revealed that he, Jensen, and Schmidt were all intoxicated from alcohol and marijuana, and as a consequence, he was unable to recognize any of the three black men. Gray merely discussed his participation in the selection of subjects for the lineup at which the defendant was identified. The defendant did not take the witness stand on his own behalf.

The primary theory of the defense in this case was predicated upon the possibility that the defendant may have been mistakenly identified as the black man with the knife, a claim obviously rejected by the jury. On the other hand, the jury did ask the trial court, in a written memo: "We have decided on three counts of the indictment, but are having difficulty with the term 'intent' in the attempt murder count. Can you be of further service to us?" After discussion of the matter with counsel, it was decided that providing the jury with the statutory definition of intent, which they had already been given, was the best that could be done to resolve this difficulty. About two hours later the jury returned its verdict of guilty upon all counts.

The first of three issues raised by the defendant in his appeal is whether there was sufficient evidence to support the jury's finding the defendant guilty of attempt murder beyond a reasonable doubt. Specifically, the defendant argues that it was not proven that he had the specific intent to kill during the commission of the offense.

■ A conviction of attempt murder requires proof of a specific intent to kill (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331), and this element must be proved beyond a reasonable doubt. (*People v. Morgan* (1978), 62 Ill. App. 3d 279, 378 N.E.2d 1298.) However, the specific intent to kill may be inferred from the facts and surrounding circumstances and from the natural and probable consequences of a defendant's act (*People v. Fleming* (1976), 42 Ill. App. 3d 1, 355 N.E.2d 345), and this intent may be inferred when it has been demonstrated that a defendant voluntarily and wilfully committed an act the natural tendency of which is to destroy another's life. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314.) It is the function of the jury to determine the existence of the requisite intent, and that determination will not be disturbed on review unless it clearly appears there exists a reasonable doubt as to the defendant's guilt. *People v. Lofton* (1977), 49 Ill. App. 3d 559, 364 N.E.2d 584.

■■ Considering the facts that the defendant held a large knife to Schmidt's throat, constantly worked the knife into his throat, and cut a large gash in Schmidt's throat, the jury's determination that the defendant had the requisite specific intent to kill Schmidt was reasonable, and we

can not say there exists a reasonable doubt as to the defendant's guilt. There was sufficient evidence to support a finding of guilty of attempt murder beyond a reasonable doubt.

The second issue raised by the defendant is whether the armed violence offense must be reversed since that offense arose from the same physical act as supports the attempt murder conviction. The State argues that the armed violence offense occurred when the defendant initially placed the knife to Schmidt's throat and demanded to be driven further. The attempt murder, according to the State, occurred when the defendant started twisting the knife and working it into Schmidt's throat.

This court has held that where the same physical act constitutes armed violence and attempt murder, the conviction for armed violence must be vacated. (*People v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399.) The State attempts to distinguish *Sass* by pointing out that that case involved the singular act of shooting a gun. We can not agree with the State's position, for this case involves a singular act of cutting on the victim's throat, although that act was of greater duration than the act in *Sass*.

However, another appellate court has held that attempt murder is a lesser-included offense of armed violence. (*People v. Howard* (1979), 78 Ill. App. 3d 858, 397 N.E.2d 877.) Since to prove armed violence, the State must prove all the elements of attempt murder plus the element of the defendant being armed with a dangerous weapon, we are forced to agree with the reasoning in *Howard*. As a result, the attempt murder conviction must be vacated.

Lastly, the defendant argues that if the attempt murder conviction is reversed, the cause should be remanded for resentencing, since the trial court may have been influenced by that conviction when imposing the other sentences. On appeal, there is a rebuttable presumption of the propriety of the sentence imposed (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—4.1), and that presumption will be considered rebutted only where the defendant has made an affirmative showing of error. *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.

Although the defendant argues that the trial court may have been influenced, the defendant has not affirmatively demonstrated from the record any indication of this influence. Accordingly, the conviction and sentence of the defendant for attempt murder is vacated, and the judgment and sentences for the conviction of armed violence, aggravated kidnapping and armed robbery are affirmed.

Judgment vacated in part, affirmed in part.

BARRY and STOUDER, JJ., concur.