THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH TREADWAY, Defendant-Appellant.

Second District   No. 2—84—0341

Opinion filed November 25, 1985.—Rehearing denied January 13, 1986.

Charles W. Smith and Douglas E. Zeit, both of Rosing, Applehans & Smith, of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Mark T. Zubor, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

The defendant, Kenneth Treadway, appeals from the judgment of the circuit court of Lake County that convicted him of the offenses of attempted murder (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4(a), 9—1(a)), armed violence predicated upon aggravated battery (Ill. Rev. Stat. 1983, ch. 38, pars. 33A—2, 12—4(a)), two counts of aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a)), and aggravated assault (Ill. Rev. Stat. 1983, ch. 38, par. 12—2(a)(1)) and sentenced him to three concurrent prison terms. Defendant raises three assignments of error before this court: (1) that he was improperly convicted of attempted murder because the State did not prove beyond a reasonable doubt that he formed the specific intent to kill Colleen Anaya; (2) that his trial attorney rendered ineffective assistance of counsel; and (3) that his 60-year extended term sentences were both improper and excessive.

The evidence elicited at defendant's jury trial reflects the following sequence of events. On December 21, 1983, at approximately 11 p.m., Colleen Anaya went to Danny's Bar in Waukegan. While there, she met and visited with a man named Russell Salmi. She saw Salmi speak briefly with the defendant who was also in the tavern. Salmi had played some pool with defendant earlier in the evening.

Around 12:30 a.m., as Ms. Anaya was leaving the tavern, she noticed the defendant standing right outside the door. As she walked by him, the defendant grabbed her from behind by the hair, said something to her, and forced her into the parking lot behind the tavern despite her struggling and screaming. The defendant then repeatedly stabbed Anaya in the back with a hunting knife. She went down on her knees facing the defendant, who still held her by the hair. When Anaya looked up she saw defendant's hand coming down with a knife. She reached out and grabbed the blade of the knife but defendant pulled it away, cutting her hand. Defendant then stabbed Anaya twice in the chest.

At this time Salmi came out the door of the tavern looking for Anaya. He saw defendant struggling with her and yelled at him. Defendant turned toward him, slashed at him with the knife, and told him to get away. Anaya was then able to get free of defendant. She ran back into the tavern and collapsed on the floor. Salmi also ran back into the tavern and told someone there to call the police.

Scott Pritchard and Kevin Brown, who were three doors away

when the incident occurred, heard screams, ran down the alley toward Danny's Bar and saw a man and a woman struggling in the parking lot. They yelled and the man turned away from the woman and then ran. Officers Hansen and Henriquez of the Waukegan police department arrested defendant a few hours after the incident. They testified that defendant had been drinking but appeared to understand everything that was happening, and his speech was soft but not slurred.

Ms. Anaya had suffered serious injuries, most notably three puncture wounds to one of her lungs. Emergency lifesaving techniques were successfully administered by an emergency medical technician and a police officer for the city.

The defendant testified that during the afternoon of December 21 he first had some drinks at Danny's Bar, then drank six or seven beers at a tavern across the street from Danny's, and finally went back to Danny's and kept drinking. He also stated that at some point he smoked marijuana outside and then went back into the tavern and drank more beer and some whiskey. He said he did not remember what happened in the parking lot although he remembered seeing himself hitting something and seeing a knife in his hand. Defendant also testified that he drinks to excess quite often but no one can tell he is drunk.

Kenneth Treadway was charged by information with the offenses of attempted murder, armed violence, and two counts of aggravated battery against Colleen Anaya, and aggravated assault against Russell Salmi. Defendant made several pretrial motions, but all were denied. On March 15, 1984, a jury found defendant guilty of all of the charged offenses and the court entered judgments on the verdicts. Defendant's post-trial motions were denied. Prior to sentencing, the aggravated battery charge was nol-prossed.

At the sentencing hearing no witnesses were called to testify, but the court heard the arguments of counsel for both sides. The court also had before it the presentence report which examined defendant's family background and his social, school and marital history, as well as his conduct while in jail awaiting trial. No evidence was presented in mitigation, but defendant himself did address the court. The court set forth its findings and concluded that an extended term would be appropriate. Facts elicited at the sentencing hearing will be expanded upon in discussion of the relevant issues.

Defendant was sentenced to 60 years' imprisonment for attempted murder, 60 years for armed violence and one year for aggravated assault, all to run concurrently.

■ The defendant argues first that the State did not prove beyond a reasonable doubt that he acted with the specific intent to kill Colleen

Anaya and, consequently, that he was improperly convicted of the offense of attempted murder. It is manifest, as the defendant maintains, that his conviction for attempted murder (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4(a), 9—1(a)) cannot be sustained unless the prosecution established that he intended to kill his victim. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 9, 473 N.E.2d 1270; *People v. Myers* (1981), 85 Ill. 2d 281, 289, 426 N.E.2d 535; *People v. Graham* (1985), 132 Ill. App. 3d 673, 682, 477 N.E.2d 1342.) Of course, the State must prove this essential element of the crime beyond a reasonable doubt. (*People v. Mitchell* (1983), 116 Ill. App. 3d 44, 48, 451 N.E.2d 934, *aff'd in part, rev'd in part on other grounds* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270; *People v. Myers* (1980), 83 Ill. App. 3d 1073, 1076, 404 N.E.2d 1082, *aff'd in part, rev'd in part on other grounds* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.) The specific intent to kill may be inferred from the surrounding circumstances, including the character of the assault upon the victim (*People v. Mitchell* (1984), 105 Ill. 2d 1, 9, 473 N.E.2d 1270), the use of a deadly weapon, and other relevant matters. *People v. Koshiol* (1970), 45 Ill. 2d 573, 578, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209; *People v. Maxwell* (1985), 130 Ill. App. 3d 212, 216, 474 N.E.2d 46.

In the case before us, the defendant grabbed Colleen Anaya from behind by her hair and forced her to the back of Danny's Bar despite her attempts to resist him and despite her screams. Then the defendant stabbed her in the back 10 or 11 times with a hunting knife whose blade was six inches long and almost two inches wide. The victim fell to her knees, and while the defendant was still holding her by the hair, she asked him why he was attacking her. When Ms. Anaya grabbed the blade of the knife with her left hand, the defendant pulled the knife from her grasp, causing multiple wounds in the hand. Immediately thereafter, the defendant stabbed her twice in the chest. Also, the defendant frustrated Mr. Salmi's attempt to aid the victim by slashing at his face with the knife and telling him to get away. Three wounds punctured one of the victim's lungs. The wounds, especially those in the chest, were life threatening. As a result of the attack, Ms. Anaya was in critical condition. Only the quick work of two public servants at the scene of the crime saved her life. The inescapable conclusion to be drawn from the defendant's conduct in the present case is that he acted with the specific intent to kill Colleen Anaya. See, *e.g., People v. Mitchell* (1981), 98 Ill. App. 3d 398, 402, 424 N.E.2d 658; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 802, 408 N.E.2d 280; *People v. Myers* (1980), 83 Ill. App. 3d 1073, 1076-77, 404 N.E.2d 1082, *aff'd in part, rev'd in part on other grounds* (1981), 85 Ill. 2d 281, 426 N.E.2d

535.

■ The defendant asserts next that his attorney rendered ineffective assistance of counsel during trial and at the sentencing hearing. In support of this contention, he argues that the record shows that his appointed attorney cross-examined the State's witnesses only minimally; presented no witnesses, other than the defendant himself, in support of his voluntary intoxication defense; and failed to call any witnesses during the sentencing hearing or proffer any mitigating evidence at that time.

Recently, the courts of this State have adopted the United States Supreme Court's rule for adjudicating claims involving the alleged ineffective assistance of both retained and appointed counsel. (*E.g., People v. Madej* (1985), 106 Ill. 2d 201, 215-16, 478 N.E.2d 392; *People v. Albanese* (1984), 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061; *People v. Young* (1985), 136 Ill. App. 3d 107, 112-15, 482 N.E.2d 1008.) In order to establish the ineffective assistance of counsel under this rule, the defendant must prove (1) that his attorney's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that the result of the proceeding would have been different if his attorney had not made the unprofessional errors. It is axiomatic that competency is determined from an examination of the totality of counsel's conduct at trial and that a defendant is entitled to competent, not perfect, representation. *People v. Eddmonds* (1984), 101 Ill. 2d 44, 69, 461 N.E.2d 347, *cert. denied* (1984), 469 U.S. 894, 83 L. Ed. 2d 207, 105 S. Ct. 577; *People v. Benka* (1983), 117 Ill. App. 3d 221, 224-25, 453 N.E.2d 71.

The well-settled rule in this State is that an attorney's exercise of judgment or discretion or employment of trial strategy or tactics does not establish the ineffective assistance of counsel. (See, *e.g., People v. Mitchell* (1984), 105 Ill. 2d 1, 12, 473 N.E.2d 1270; *People v. Greer* (1980), 79 Ill. 2d 103, 122, 402 N.E.2d 203; *People v. Benka* (1983), 117 Ill. App. 3d 221, 225, 453 N.E.2d 71.) This precept obtains even though the strategic judgments may have been erroneous or unsuccessful. *People v. Miller* (1983), 120 Ill. App. 3d 495, 502, 457 N.E.2d 1373.

After examining the totality of defense counsel's representation of the defendant, both during trial and at the sentencing hearing, we conclude that the defendant received the effective assistance of counsel. Before the trial, defendant's attorney moved to suppress physical evidence, statements and identification. Afterwards, she moved for a new trial. Suffice it to say that her representation of the defendant at trial satisfied the objective standard of reasonableness test mentioned

above. (See, *e.g., People v. Baylor* (1982), 111 Ill. App. 3d 286, 292, 443 N.E.2d 1137.) We perceive that the extent of defense counsel's cross-examination of the State's witnesses as well as her decision not to present additional witnesses in support of the defendant's defense of voluntary intoxication involved nothing more than the exercise of her professional discretion and the use of trial strategy. As we stated earlier, any question relating to the use of trial tactics or the exercise of an attorney's judgment is an insufficient basis upon which to predicate a claim or finding of ineffective assistance of counsel. With respect to counsel's performance at the sentencing hearing, our examination of the record reflects that, even though she did not present any testimony in mitigation, she ably argued and represented the defendant's interests. It is clear that the failure to proffer evidence in mitigation does not necessarily demonstrate the incompetence of counsel. *People v. Kubat* (1983), 94 Ill. 2d 437, 488, 447 N.E.2d 247.

■■ ■ The defendant's final contention is that the 60-year extended-term sentences the trial court imposed in this case were both improper and excessive. He asks this court to vacate his sentences and remand the cause for resentencing or, in the alternative, to exercise its authority under Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)) and reduce his sentence.

While Supreme Court Rule 615(b)(4) allows a reviewing court to reduce a sentence imposed by a trial court, it is well established that this power should be exercised only when there has been an abuse of discretion and such action is necessary. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Wojtasik* (1982), 104 Ill. App. 3d 263, 432 N.E.2d 925.) To modify the sentence, it must appear to the reviewing court that the punishment clearly departs from the spirit and purpose of fundamental law, and the requirement of our constitution that the sentence be proportionate to the nature of the offense and measure the possibilities for rehabilitation. *People v. Grau* (1975), 29 Ill. App. 3d 327, 330 N.E.2d 530.

In *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491, the court stated that, pursuant to the Illinois Constitution, rehabilitation must not only be considered as a factor in determining a proper sentence, but it must actually be one objective of a sentence. The court said that each case must be considered separately for its response to the constitutional mandate and that "[t]he nature and circumstances of the offense and the history and character of the defendant will be the governing factors." 49 Ill. App. 3d 644, 649, 364 N.E.2d 491.

We note that sentences have been reduced on the basis of rehabilitative potential where a defendant came from a poor social environ-

ment (*People v. Kosanovich* (1979), 69 Ill. App. 3d 748, 387 N.E.2d 1061), where defendant has expressed a desire to continue his education (*People v. Nelson* (1982), 106 Ill. App. 3d 838, 436 N.E.2d 655), and in certain cases where defendants were young. (*People v. Rickard* (1981), 99 Ill. App. 3d 914, 425 N.E.2d 1317.) Our supreme court reduced a death sentence in *People v. Walcher* (1969), 42 Ill. 2d 159, 246 N.E.2d 256, partly on the basis that defendant was an alcoholic and that evidence indicated he had been drinking at the time of the offense.

In the case presently before us, the trial court found there had been no provocation for the crime; that defendant's character and attitude indicated that he was not unlikely to commit another crime; that defendant's conduct was heinous, brutal and indicative of wanton cruelty; and therefore an extended term would be appropriate and imprisonment necessary for the protection of the public. We must look beyond the court's findings, however, to examine defendant's potential for rehabilitation. The record reveals that defendant was a 24-year-old high school dropout who had been physically abused as a child and had suffered from a drug and alcohol problem since the age of 14. Significantly, prior to the instant conviction, he had only a minor criminal history. These present offenses, though serious, were perpetrated in a fleeting moment of intoxicated rage upon a stranger. The record also reveals that defendant, the father of a young child, personally addressed his alcohol problem at his sentencing hearing and expressed a desire to improve himself. Even before the hearing, while in jail awaiting trial, defendant had joined Alcoholics Anonymous and earned his G.E.D. high school diploma.

We conclude that the total circumstances of this particular case indicate that the 60-year sentences imposed on defendant are not warranted. We believe that the defendant has rehabilitative potential that would be poorly served by such a long sentence. A lower sentence will allow defendant at least the possibility of being restored to a meaningful, productive life, and at the same time will be adequate retribution for his offenses, provide protection for society and serve as a deterrent.

Accordingly, under the authority of Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)), we reduce defendant's respective sentences for attempted murder and armed violence to 30 years. The judgment of the circuit court of Lake County is affirmed as modified.

Affirmed as modified.

NASH, P.J., and SCHNAKE, J., concur.