THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANKLIN MITCHELL, Defendant-Appellant.

First District (6th Division)   No. 1—89—1916

Opinion filed February 1, 1991.

564

Howard Wilson, P.C., of Chicago (Janette C. Wilson, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Defendant Franklin Mitchell was convicted by a jury of attempted murder and sentenced to six years in prison after he admitted he fired three shotgun rounds at a man on the roof of a building near his apartment. The State successfully proved at trial that defendant fired at three people who were on the roof—two officers and the owner of the building—even after police officers identified themselves and urged defendant to stop shooting.

Defendant contended at trial that he fired two shots into the air and a third into the ground as a warning to the person he saw on the roof and only fired after the man he saw failed to respond to his request for identification. The jury convicted defendant of three counts of attempted murder.

On appeal, defendant contends the State failed to prove he had the specific intent to commit murder, as required for a conviction of

attempted murder, and failed to prove he took a substantial step in furtherance of murder as required for an attempted murder conviction. Defendant also argues that the court erred in its jury instructions which pertained to an out-of-court statement made by the defendant that was admitted into evidence. Defendant argues further that the trial judge erred in failing to give *Prim* instructions to the jury when he learned they were deadlocked after five hours of deliberation.

In *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731 (superseded by statute as stated in *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 439 N.E.2d 1811), the court did not formulate a specific instruction to be given to a deadlocked jury but did express approval of section 5.4 of the American Bar Association Standards Relating to Trial by Jury (1968), which states: "If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction ***." The directive in *Prim* was aimed mainly at eliminating instructions to concede to the majority. *People v. Campbell* (1987), 163 Ill. App. 3d 1023, 516 N.E.2d 1364.

Defendant admits and the State has proven that three shots were fired on August 30, 1987. In August 1987, Franklin Mitchell lived on Chicago's west side across the alley from a shoe store that had been burglarized four times that summer. On the evening of August 30, defendant saw someone on the roof of the shoe store. He picked up his shotgun and fired three times. No one was injured. After the shooting, defendant went to the alley between his home and the store where police arrested him. He was tried and convicted of three counts of attempted murder.

At trial, Lt. John Farrell testified that at 8:20 p.m. on August 30, he and three other police officers went to Sun Shoe Store on Chicago's west side to investigate a burglary that had occurred August 29. As part of the investigation, Farrell, the store owner, Hong Ja Worle, and another officer, James Jones, drove an unmarked police car around to the back of the store. They parked the car in the alley, and the three climbed a stairway onto the roof of the building to see where the burglar or burglars had entered.

Farrell testified that Jones and Worley stopped as soon as they were on the roof and that he, Farrell, proceeded to the shoe store roof next door to investigate where the illegal entry occurred. Farrell testified that he heard a shot and took cover. In the subsequent moments, Farrell heard what sounded like a round of ammunition being

chambered into a shotgun and exchanged conversation with Jones, speculating about where the shot originated. Farrell testified that the sound seemed to come from south of the shoe store, across the alley on Monroe Street where a residential building was located.

Farrell testified that he yelled, "We're police officers, don't shoot," and that someone across the alley yelled, "Fuck you, police officers." He testified that after he identified himself, he saw a muzzle flash and a figure in the window of the apartment later identified as the defendant's apartment. Farrell testified that he pulled his 9 millimeter handgun and fired one shot toward the figure, missing him. He testified that he then identified himself several more times and heard Jones yell the same thing back at him several times and fire one more shot. He testified that each time a shot was fired he heard pellets skipping off the wall and roof nearby.

Farrell testified that after other police officers arrived and he told them where the shots came from, police officers secured the area around the apartment building. He testified that at that point, defendant came down from the second floor and asked police what was going on. Farrell noted that while defendant talked with police officers below, he and other officers went to defendant's apartment, where they recovered three expended shells from the floor of the porch and a 12 gauge shotgun.

On cross-examination, Farrell acknowledged that there was at least one tree in the lot between the officers and the defendant's apartment, that the incident occurred after 8:20 p.m. at night and that he could not identify the defendant as the person at the window from where the muzzle flash originated or as the person who yelled the profanities. He admitted that no shotgun pellets were recovered from the roof of the building despite his testimony that the shotgun blasts were aimed in his direction and that they had heard the pellets skipping off the wall and roof.

Hong Ja Worle testified that, at first, she didn't know whether the noise she heard was gunfire or a firecracker. She testified that the police officers were yelling, "Police officer, don't shoot," but that someone kept yelling back from the other side of the alley, "Fuck you police, fuck you," and then he would shoot again. She testified that someone shot at the police officer twice, Farrell returned with one shot and then someone shot at them once again. She also testified that she believed two different voices could be heard from across the alley but added that she kept her head down during the entire incident and saw nothing.

Sergeant James Jones testified that when they heard shots, Farrell, and then later he, yelled "Don't shoot, we're police," but a male voice responded, "Fuck you, police officers." He testified that he heard a second shotgun round being chambered, a shot and then "a crack which would account for the pellets hitting the wall behind me." Jones testified that he felt a pebble hit his foot, which caused no injury. He testified that once again the officers announced their presence and once again a voice yelled back, "Fuck you, police officer" and another shot was fired. Jones testified that police officers and the defendant exchanged words at least three times while the shooting was going on.

He testified that when the shooting ended and other police officers arrived on the scene, the defendant came down from his apartment and asked the officers, "What's happening?" Jones related that another officer told the defendant about shots being fired and then the defendant stated "words to the effect he had been shooting at some people on the roof of the shoe store." On cross-examination, Jones admitted that it was dark at the time of the shooting and that no pellets were retrieved from the rooftop.

The two officers that accompanied Farrell and Jones to the shoe store, Barbara Lebron and John Ferriter, also testified that they exited the shoe store and drove down the alley after they heard gunshots. Ferriter testified that defendant came down to the alley after the shootings, and when defendant asked what was happening, he responded that "somebody from this house was shooting at the police." Ferriter testified that defendant then said, "I was shooting at somebody that was breaking into that building over there." Ferriter then arrested defendant and joined other police officers in a search of the porch area of defendant's apartment. He testified that police found three expended shotgun shells and a 12 gauge shotgun with one live round still in the chamber. Ferriter testified that defendant claimed ownership of the shotgun and at no time indicated that he was simply firing warning shots at the people on the nearby roof. Lebron testified that she was the one who discovered the shotgun, stuffed under a cushion of the sofa. She testified that the barrel of the gun had cushion material stuck to it, indicating to her that the barrel was still hot when it was put below the cushion.

Assistant State's Attorney Richard A. Stevens also testified for the State. He testified that he spoke to defendant at about 2 a.m. after the evening of the shooting and defendant agreed to sign a statement written by Stevens as told to him by defendant. Stevens testified that defendant did not have his reading glasses, but he did agree

to let Stevens read the statement and the two made several corrections before defendant signed the statement. Stevens testified that defendant never spoke about "warning shots" during the interview.

On cross-examination Stevens testified that defendant never mentioned to him that his glasses were broken by the police officers who arrested him. Stevens testified that defendant told him he yelled, "What are you doing up there?" or words to that effect and then when he got no response, he opened fire once at the man on the roof and then at a person below in his yard. Stevens said defendant told him he fired possibly two more shots at the person on the roof.

Stevens then read defendant's signed statement into the record. The statement included his acknowledgment and waiver of his *Miranda* rights and included, in part: "Mr. Mitchell went to his rear porch and observed a white man crouched down on the roof of a store across the alley. Mr. Mitchell yelled what are you doing up there end quote. There was no response, so Mr. Mitchell took a shotgun he keeps on the back porch and fired once at the man on the roof. Mr. Mitchell then heard someone in his yard below. He fired at that person after he was fired at one time. Mr. Mitchell then fired at least one more time possibly twice at the man on the roof. Mr. Mitchell never got a response from the man on the roof and then heard anyone identify themselves as police officers." The statement also denied any drug or alcohol use and included an admission that defendant had not been threatened in return for his statement, nor was he made any promises.

After Stevens' testimony, the State rested and the defense called its only witness, the defendant, Mitchell, to the stand. Defendant testified that on the evening of the shooting, he saw a man crouched on the roof of the shoe store and hollered at him, "What are you doing up there?" Defendant testified that he then picked up his shotgun located on the back porch and fired it up in the air. He testified that when he then heard noise below him, he fired another shot down into the dirt below. He testified that a neighbor then came running down the alley, telling him not to shoot anymore but he had his finger on the trigger already and fired a third shot. Defendant testified that he then put the shotgun down on the couch. He testified he saw only one man on the roof and that he never "uttered a word" to that man. Defendant testified that he fired two shots into the air and that he surrendered to police after the third shot was fired.

Defendant testified that when he approached Sgt. Farrell, Farrell said to him, "Didn't you see we were white?" and that he started to respond, "Since when did burglars have a color preference?" But

defendant testified that before he could complete his sentence, Farrell swung his black flashlight toward defendant's groin and then slapped defendant's glasses off his face.

Defendant testified that he had no intent to shoot anyone or at anyone. He testified that he didn't speak to anyone in his yard and first spoke to an assistant Cook County State's Attorney at the station. He challenged the accuracy of the statement read in court. He testified that he never told Stevens that he saw a "white" man on the roof, only a man. He testified that he never told Stevens he was shooting "at a person" but only that he had fired in the air.

■ On appeal, defendant contends the evidence failed to prove he had the requisite intent or that he took a substantial step toward committing the specific offense, two factors required for an attempted murder conviction. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 475 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) When a conviction is challenged on the basis of insufficient evidence, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d 237.

■ First we consider whether defendant had the requisite intent to commit attempted murder. The offense of attempted murder requires a mental state of specific intent to kill. (*People v. Mitchell* (1981), 98 Ill. App. 3d 398, 424 N.E.2d 658.) Intent is a state of mind which, if not admitted, can be established by proof of surrounding circumstances, including the character of the assault, the use of a deadly weapon and other matters of which an intent to kill may be inferred. (*People v. Winters* (1986), 151 Ill. App. 3d 402, 502 N.E.2d 841.) The very fact of firing a gun at a person supports the conclusion that the person doing so acted with an intent to kill. *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 379 N.E.2d 641.

The State argues that witness testimony and defendant's own testimony, through his statement to the assistant Cook County State's Attorney, supported the jury's finding that defendant had the requisite intent. Stevens testified and defendant acknowledged in his statement that defendant shot at a man on the roof of the shoe store. Defendant cites *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, for the proposition that the intent specified in the charge must be an intent to commit a specific crime. In *Trinkle*, the indictment itself was drafted in error. There, the indictment against Trinkle

charged him with attempted murder when "he did without lawful justification shoot Gayle Lane with a gun knowing that such act created a strong probability of death or *great bodily harm* to Gayle Lane or another." (Emphasis added.) (68 Ill. 2d at 200.) To be convicted of attempted murder, it is not sufficient that defendant intended to cause great bodily harm. The intent must be an intent to murder. Defendant here was charged with an attempt to commit the specific crime of murder. He was not charged with attempt to commit great bodily harm and therefore *Trinkle* is distinguishable from our case.

Defendant cites *People v. Thomas* (1978), 60 Ill. App. 3d 673, 377 N.E.2d 195, for the proposition that the "mere knowledge that the consequences of one's action may result in death or grave bodily injury, or possession of the intent to do bodily harm is insufficient to sustain an attempted murder conviction." However, that is not the holding of the court in that case. The court in *Thomas* held that to obtain a conviction on the charge of attempted murder, the indictment must charge a specific intent to commit murder, and the jury must be instructed accordingly. Defendant here was charged with the specific offense of attempted murder, and the jury was properly instructed of that charge.

■ Defendant argues on appeal that "according to the facts presented in this case, the defendant, Franklin Mitchell, fired warning shots," thus showing an absence of intent to commit murder. The defendant offered only his own testimony to support his argument. However, three other witnesses, who had been pinned to the roof of the building, testified that the defendant yelled at them and fired in their direction. In his statement, read into evidence by the assistant Cook County State's Attorney, defendant acknowledged that he saw a person on the roof of another building and then fired a shotgun "at the man on the roof." Where the signed statement was inconsistent with defendant's trial testimony regarding his intent, it is the function of the jury to determine the existence of requisite intent, and that determination will not be disturbed on review unless a reasonable doubt exists as to the defendant's guilt. *People v. Myers* (1980), 83 Ill. App. 3d 1073, 404 N.E.2d 641.

The trier of fact, in our case the jury, had the responsibility to determine the credibility of the witnesses. The defendant testified that he was firing warning shots only. The police officers and store owner testified as to the verbal exchanges that took place from the rooftop. A third police officer testified that defendant told him he was shooting at a burglar on the store roof. An assistant Cook County State's Attorney testified that defendant told him he was shooting at some-

one on the roof. Given this testimony, we hold that the record supports the jury's findings.

■ We next consider whether defendant committed any act which can be considered as a substantial step toward commission of murder, which is another essential element of the crime of attempted murder. A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a).) Murder is defined as an act in which a person "kills an individual without lawful justification [whether he] intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or *** knows that such acts create a strong probability of death *** to that individual or another." Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).

■ The State argues that the trial testimony, when considered in the light most favorable to the prosecution, proves the defendant took a substantial step toward the commission of murder when he fired three shots at the two police officers and the store owner and then ignored the officers' warnings informing him that they were police officers. The defendant argues that trial evidence proves defendant did not shoot at the police officers. Defendant argues that several facts brought out at trial support this conclusion, including the facts that no one actually witnessed him shooting the gun, defendant denied firing at the people on the roof and that no pellets were recovered from the roof where the officers and store owner had been pinned down when the shooting occurred.

Defendant testified at trial that he saw someone on the roof across the alley and then went through the physical act of moving to another location on his porch and picking up a shotgun. Police officers testified that at least once they heard a shotgun round being "chambered in[to]" the gun. These actions can be construed as physical acts in furtherance of the offense.

Defendant admits he fired three shots but argues that these rounds were fired as warnings. But, intent is not the determinative issue in establishing what conduct comprises a substantial step in furtherance of an offense, it is the act itself. Defendant admits picking up the gun and admits firing the three shots. The jury found defendant took a substantial step toward committing the crime and was guilty of attempted murder. We find the record supports the jury's conclusion.

Defendant also cites as error the trial court's instructions to the jury to continue deliberating when, after five hours of deliberation,

the jury indicated that it was deadlocked. Defendant contends that the trial court should have issued instructions to the jury in accordance with the *Prim* decision, assuring that those in the minority position on the jury would not feel pressured to concede to the majority. The State argues that defendant has waived this issue on appeal by failing to cite any authority in his brief or anything from the record to support his contentions. An issue not argued in a party's brief is waived despite general allegations of error. (*People v. Shaw* (1985), 133 Ill. App. 3d 391, 404, 478 N.E.2d 1142, 1153.) Supreme Court Rule 341(e)(7) provides, in pertinent part, that appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citations of the authorities and the pages of the record relied on. *** Points not argued are waived." 134 Ill. 2d R. 341(e)(7), see also *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.

■■ ■ We find nothing in the record and nothing in defendant's brief to support these contentions of error. Defendant cites no case authority to support his argument and therefore has waived these issues on appeal. Even if we were to consider the issue of the court's instructions to the deadlocked jury, we would find no error. Both the State and defendant agree that the court instructed the jury to continue to deliberate. That instruction has been held to be simple, neutral and in no way coercive. *People v. Farella* (1979), 79 Ill. App. 3d 440, 398 N.E.2d 615.

■■ Defendant also argues that his out-of-court statement to police officers following his arrest was improperly submitted to the jury as a confession or admission of guilt. Defendant contends the court improperly characterizes these statements as a "confession" and the court erred in the instruction it gave to the jury. In fact, no jury instruction was given with regard to a "confession." Instead, the jury received only a general instruction that it should determine what weight it should give to any statements made by the defendant.

Finally, defendant contends that the court erred when it failed to instruct the jury on the lesser included offenses of aggravated assault and reckless conduct. Defendant briefly argues this issue citing four cases to support his position. In the first, *People v. Davis* (1981), 100 Ill. App. 3d 268, 426 N.E.2d 1047, the appellate court let stand an attempted murder conviction and vacated two aggravated battery convictions as lesser included offenses because the court considered the defendant's actions part of a single physical act. In *Myers* (83 Ill. App. 3d 1073), an attempted murder conviction was vacated because the court found that the defendant committed a single physical act for

which he was convicted of armed violence and found that armed violence is a lesser included offense of attempted murder.

These cases are distinguishable here. In *Davis* and *Myers*, the defendants each committed a single act of violence but then were convicted of multiple offenses. The reviewing courts found this inappropriate since the defendant had committed only one act. Here, the defendant committed one act of violence and was convicted on one act of violence. He was not charged with lesser included offenses that might have necessitated reversals such as were required in *Davis* and *Myers*.

Two other cases cited by defendant involve jury instructions in attempted murder cases. In *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, the supreme court affirmed an attempted murder conviction and found no error in instructing the jury that proof of motive is not required. The reviewing court in *Thorns* (62 Ill. App. 3d 1028), affirmed an attempted murder conviction, stating that specific intent to take a human life, even if based on circumstantial evidence, is an essential element of the crime of attempted murder. The court also considered what jury instructions were proper to help the jury evaluate the testimony of a former drug addict. Neither of these cases supports defendant's position that failure to include an instruction as to lesser included offenses where none was offered by the defendant was error.

Defendant misquotes *People v. Salazar* (1976), 37 Ill. App. 3d 800, 347 N.E.2d 86, to argue that the appellate court has the power to reduce a conviction from attempted murder to reckless homicide. In *Salazar* the court reduced a conviction for involuntary manslaughter to reckless homicide after the State conceded that the trial court improperly refused an instruction on reckless homicide. Here, defendant never tendered instructions on any lesser included offenses to the circuit court nor objected to the instructions given or the failure of the court on its own to instruct on lesser included offenses and, therefore, the court did not refuse a tendered instruction. Also, since no death occurred, it is illogical for defendant to seek to have his conviction reduced from attempted murder to reckless homicide.

Defendant argues on appeal that: "In the case before this court on appeal, the criminal attempt constitutes the greater crime. The defendant's conviction for attempt murder was based upon a lesser included offense of armed violence, which was based on the underlying felony of aggravated battery. *** Thus the court can as the appellate court did in [*Salazar*] reduce the conviction from attempt murder to

reckless homicide." Defendant has not cited to any authority which supports his position.

A reviewing court is entitled to have the issues clearly defined and is not a depository in which the appealing party may dump the burden of argument and research. (*Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325, 472 N.E.2d 586.) The appellate court, however, in the exercise of its responsibility for a just result, can ignore considerations of waiver and decide a case on grounds even though they are not properly argued by a party. *Anderson v. Smith* (1980), 91 Ill. App. 3d 938, 415 N.E.2d 643.

■ In general, a defendant is entitled to an instruction on a lesser included offense when all the elements of that offense are included within the greater offense and if there is some foundation in the evidence that would support a conviction for the lesser offense. *People v. Dace* (1983), 114 Ill. App. 3d 908, 449 N.E.2d 1031, *aff'd* (1984), 104 Ill. 2d 96, 470 N.E.2d 993.

Here, defendant did not offer alternative or additional jury instructions on lesser included offenses. Defense counsel argued in her post-trial motion that the "defendant should not be prejudiced even though the defense attorney may have made a tactical decision not to present such an instruction."

The State responded that since defendant failed to request instructions on lesser included offenses of aggravated assault and reckless conduct, the trial court did not err in failing to instruct the jury on these offenses. The State argues that the defense strategy was to instruct the jury only as to attempted murder so that the jury could either convict defendant of attempted murder or acquit him. The State argues that the defendant cannot now complain that the trial court failed to instruct the jury on lesser included offenses when he did not request the necessary instructions.

In *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, the supreme court stated that a defendant waives any error contained in jury instructions if he does not object or proffer alternative instructions at trial and, ordinarily, issues not properly raised in a defendant's post-trial motion will not be considered on appeal. However, if the interests of justice require, substantial defects in jury instructions in criminal cases may be considered, even though the defendant has failed to make timely objections. (134 Ill. 2d R. 451(c).) The exception will be invoked to correct "grave errors," such as failing to instruct on the burden of proof and the elements of the offense. *Reddick*, 123 Ill. 2d at 198.

We see no such grave error here. Proper instructions were given for the crime of which defendant was convicted. He offered no additional instructions at trial and made no objections to the instructions given. We find no error.

For the reasons stated above, we affirm defendant's conviction for attempted murder.

Judgment affirmed.

RAKOWSKI, P.J., and EGAN, J., concur.