(Nos. 58785, 58982 cons

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Appellee, v. SHERRY LYNNE MITCHELL, Appellee and Appellant.

*Opinion filed October 19, 1984.*

SIMON, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and John R. Clemons, State's Attorney, of Murphysboro (Mark L. Rotert and Michael V. Accettura, Assistant Attorneys General, of Springfield, and Stephen E. Norris and Raymond F. Buckley, Jr., of the State's Attorneys Ap-

pellate Service Commission, of Mt. Vernon, of counsel), for the People.

Howard B. Eisenberg, of Carbondale, and Dennis J. Hogan, of Murphysboro, for appellee and appellant Sherry Lynne Mitchell.

JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Sherry Lynne Mitchell, was convicted by a Jackson County jury of two counts of attempted murder and two counts of aggravated battery of a child. She was sentenced to concurrent terms of 14 years for each of the four offenses. The appellate court vacated the convictions and sentences for attempted murder but affirmed the convictions and sentences for the aggravated battery of a child. (116 Ill. App. 3d 44.) We granted both the State's and defendant's petitions for leave to appeal and consolidated the cases.

The convictions stem from the defendant's beatings of her 16-month-old daughter, Shannon Mitchell. The evidence at trial established that the defendant had transported the child to the emergency room of St. Joseph Memorial Hospital in Murphysboro, Illinois, during the morning of August 23, 1981. The defendant handed Shannon to a nurse, indicating that she had "to go find the mother," and then left the building. The child was in critical condition, and her body was covered with bruises. She was suffering from respiratory distress and dehydration and was comatose. The treating physician testified she evidenced symptoms of brain damage and that he did not expect her to survive. The supervisor of the emergency department of the hospital, a registered nurse, testified that "the bruises were not of the same age." Following emergency medical treatment at St. Joseph Hospital, Shannon was transferred to Cardinal Glennon Hospital in St. Louis, Missouri. She remained

hospitalized until October 7, at which time she was transferred to a nursing home specializing in pediatric care. At the time of trial Shannon Mitchell could not sit without the aid of an orthopedically designed chair and apparently suffered sight impairment. She was unable to roll over or raise her head and was undergoing therapy to assist her with her motor skills. The testimony presented and the photographs admitted into evidence clearly established, and the jury found, that Shannon Mitchell had suffered great bodily harm.

Based upon a description of the vehicle which the defendant had driven when she took the child to the hospital, officers of the Murphysboro police department were able to determine Shannon's identity. When confronted by the police officer at her residence, defendant initially indicated that she was the baby sitter but ultimately admitted her true identity, and agreed to accompany the officer to the police station.

At the station defendant was given *Miranda* warnings, following which she acknowledged that she understood those rights and executed a written waiver. During the interrogation which followed, she admitted that she had taken her child to St. Joseph Hospital that morning. She indicated that the child was bruised and unconscious when she took her to the emergency room. Defendant stated that she and her boyfriend, Holbert Carrel, with whom she lived, had had an argument at approximately 3 p.m. on August 22. She became angry and struck Carrel several times. She continued to vent her anger and frustration by hitting Shannon several times with her hand, fist and a belt. Defendant indicated that the child had fallen down several times during the beating, and the defendant picked her up in order to strike her again. Following this beating, defendant stated, the child lay down for a period but then began to play. When Shannon was put to bed at approximately 11 p.m., there

were several visible bruises, but she otherwise appeared to be normal.

Defendant further stated that the following morning, August 23, Shannon was "not minding and was getting into cupboards." As a result, defendant became "nervous" and she again struck the child. Defendant advised the officers that she struck Shannon with her open hand "she didn't know how many times, but a few." Following these blows, defendant placed Shannon in a high chair, and a short time later the child "apparently had a seizure and passed out."

After Shannon became unconscious, defendant placed a cool cloth on the child's head for approximately 15 minutes. When she remained unconscious, defendant took her to the hospital. When asked by the officers why she had beaten Shannon, defendant further explained that she wanted to give the child away, that the child reminded her of its father, whom defendant hated, and that defendant was taking her anger out on the child.

During trial, the prosecution also presented the testimony of an insurance agent to establish that defendant had purchased a life insurance policy insuring the life of her daughter. This testimony established that defendant had purchased a $10,000 life insurance policy on the life of Shannon Mitchell, naming herself as the beneficiary, on June 23, 1981. On cross-examination, however, it was elicited that the agent had initially contacted defendant, that is, defendant had not solicited the insurance. Further, the insurance agent testified that he did not know whether the policy remained in effect after it was issued because he terminated his employment with the insurance company. Defendant presented no evidence.

The trial court submitted the case to the jury on charges of both attempted murder and aggravated battery as a result of the beating of August 22 and identical charges based upon the beating of August 23. The court

rejected defense counsel's tender of a jury instruction on the lesser included offense of simple battery. The jury convicted the defendant on all four charges, and as earlier stated, she was sentenced to concurrent terms of 14 years' imprisonment on each of the four counts.

The appellate court affirmed defendant's convictions and sentences on the two aggravated-battery-of-a-child counts. However, that court vacated the two attempted-murder convictions based upon its conclusion that the State had failed to prove beyond a reasonable doubt that the defendant intended to kill Shannon Mitchell. Before this court, the State seeks reinstatement of the attempted-murder convictions, arguing that the jury was justified in inferring the requisite intent based upon the character of the assault and other circumstances.

In order to sustain a conviction for attempted murder, the prosecution must prove that the defendant had the intent to kill the victim. (*People v. Myers* (1981), 85 Ill. 2d 281, 289; *People v. Barker* (1980), 83 Ill. 2d 319, 324.) Admittedly, the specific intent to kill may be shown by circumstances, including the character of the assault upon the victim. (*People v. Garcia* (1983), 97 Ill. 2d 58, 85; *People v. Ruiz* (1982), 94 Ill. 2d 245, 263; *People v. Myers* (1981), 85 Ill. 2d 281, 289; *People v. Koshiol* (1970), 45 Ill. 2d 573, 579, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209, overruled on other grounds in *People v. Nunn* (1973), 55 Ill. 2d 344.) It does not necessarily follow, however, that every assault involving serious bodily injury constitutes attempted murder.

In this case, the prosecution relied primarily upon defendant's statements to the police officers to establish her guilt. While she undoubtedly repeatedly struck her child, we do not believe that the circumstances of this striking, without more, are sufficient to establish the required intent, particularly in view of defendant's expla-

nations for her behavior. There was ample opportunity for her to complete her crime if, in fact, she intended to kill the child. Further, following Shannon's loss of consciousness, defendant applied a cool cloth and ultimately took her to the hospital for emergency medical attention, actions which are not consistent with an intent to murder. This court has previously acknowledged that abandonment of the intent to kill, once the elements of attempted murder are complete, is no defense to the crime. (See *People v. Myers* (1981), 85 Ill. 2d 281, 290.) Here, however, considering all of the circumstances, the proof is, in our judgment, simply insufficient to establish beyond a reasonable doubt that defendant possessed the requisite intent to kill. *People v. Tamayo* (1978), 73 Ill. 2d 304, 310; *People v. Harris* (1978), 72 Ill. 2d 16, 22.

The State also introduced, over the defendant's objection, evidence that defendant had purchased a $10,000 insurance policy upon her daughter's life. This evidence was offered in an effort to establish a motive for defendant to kill her daughter. However, the insurance agent who testified about the defendant's purchase of this policy was unsure as to whether the policy remained in effect on the date of the beatings or had lapsed for nonpayment of premiums. This court long ago recognized that any evidence which tends to show that an accused had a motive for killing is relevant. However, with reference to insurance policies, this court has required proof of the existence of such a policy and its relationship to the defendant. In *People v. Gougas* (1951), 410 Ill. 235, 239, this court determined that the admission of evidence of a life insurance policy must be predicated upon evidence of the defendant's knowledge of its existence, its validity, or believed validity, and that he will benefit therefrom. Absent this foundation evidence, this court noted in language directly applicable here.

"The policy *** standing alone in evidence before the jury, [does] little more than excite a suspicion of guilt and

"[is] not of the convincing character which satisfies the mind that [defendant] was motivated by any thought of gain from the insurance when he committed his homicidal assault on the deceased." 410 Ill. 235, 240.

As a result, this court determined it was error to admit the insurance policies in that case because there was no evidence that the defendant knew of the existence of the policy and of his beneficial interest in it. (410 Ill. 235, 240.) Similarly, here, the State failed to prove that the policy was in force at the time of these offenses, and there was no evidence that the policy played any role in the defendant's actions. However, in light of our reversal of the attempted-murder counts, we find the error in admitting this evidence to be harmless.

Following the proceedings in the appellate court, defendant's retained counsel was placed on inactive status by this court and new counsel was appointed. Before this court, new counsel argues that defendant was denied her constitutional right to effective representation in the proceedings in the trial and appellate courts.

The fundamental right of a defendant in a criminal case to be effectively assisted by counsel is guaranteed by the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV). In *People v. Albanese* (1984), 104 Ill. 2d 504, we this term discussed at some length and adopted the rule announced by the Supreme Court in *Strickland v. Washington* (1984), 466 U.S. ____, ____, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064, that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" and that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In *Albanese* we noted the similarities to our own rule as reiterated in *People v. Stewart* (1984), 101 Ill. 2d 470,

492, *People v. Royse* (1983), 99 Ill. 2d 163, 168-70, and *People v. Greer* (1980), 79 Ill. 2d 103, 121, and quoted the guidelines enunciated by the Supreme Court. It is unnecessary to restate them in the same detail here, although they are, of course, applicable.

In this case, the initial showing of counsel's incompetence is not in issue, since the State has conceded that trial counsel provided ineffective assistance. Too, we are aware, as a result of the earlier proceedings in this court, of the shortcomings of defendant's trial counsel which culminated in his November 14, 1983, transfer to inactive status pursuant to our Rule 758 (87 Ill. 2d R. 758). The parties differ, however, as to the extent of this ineffectiveness and whether the result of the trial would probably have been different, absent counsel's incompetence. Our earlier action is not, of course, dispositive of that question.

Specifically, defendant contends that her trial counsel erred by failing to object in an appropriate and timely manner or to raise several readily apparent legal questions during trial. Initially, we note that any evaluation of counsel's conduct cannot properly extend into areas involving the exercise of judgment, discretion or trial tactics. Counsel is entitled to great deference in this court's evaluation of his conduct. See generally *Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 695-96, 104 S. Ct. 2052, 2066; *People v. Albanese* (1984), 104 Ill. 2d 504; *People v. Barnard* (1984), 104 Ill. 2d 218.

Since we reverse the attempted-murder convictions, it is unnecessary to consider defendant's argument that her counsel was incompetent in failing to object to the State proceeding on aggravated-battery and attempted-murder charges arising from the same conduct in both beatings. Even if error occurred in submitting the case to the jury on all four counts, such error is harmless in light of the fact the defendant now stands convicted of only the two lesser offenses.

Defendant also urges that she was prejudiced by counsel's failure to file a timely motion to suppress her confession to the police officers (Ill. Rev. Stat. 1981, ch. 38, par. 114—12). When defense counsel raised this issue at trial, the judge held it had been waived. Certainly this confession was critical to the prosecution's case, and without it the convictions could not stand. However, the record in this case, including consideration of the police officer's testimony at the defendant's preliminary hearing and at trial, clearly establishes that a motion to suppress would not have been successful even if timely filed. The officer's undisputed testimony on both occasions demonstrates that the defendant knowingly and voluntarily waived her rights prior to the interrogation. In fact, the executed waiver form was admitted into evidence at trial. Thus, counsel's failure to file a timely motion had no effect on the outcome of the trial.

Defendant also submits that counsel should have objected at trial because there was inadequate evidence to sustain a conviction for two counts of either offense. This issue is also raised as a substantive aspect of the defendant's appeal to this court. It is urged that there was insufficient evidence to distinguish between the injuries caused by the respective beatings on the two dates. Because each offense of aggravated battery of a child requires proof of "great bodily harm," the defendant argues that she cannot properly be convicted of two offenses.

Initially we note that defense counsel made a motion for a directed verdict at the close of the prosecution's case. In denying this motion, the trial judge specifically found that there was sufficient evidence to support each of the four counts which were submitted to the jury. Since the attempted-murder convictions have been set aside, we consider only the two counts charging aggravated battery of a child.

The confession of the defendant evidences a clear dis-

tinction between the beatings of August 22 and August 23. Defendant repeatedly struck the child with her hand, fist and belt on August 22. It was on this date the child fell as she was being struck, and the defendant each time stood her back up to hit her again. Following this beating, there were several bruises visible on the body of the child. On August 23, defendant again repeatedly struck the child. After this second beating the child had a seizure and "passed out." There can be no doubt that by the time the August 23 beating ended the child had suffered great bodily harm, for when the doctor examined her, he did not expect her to live. Significantly, the emergency-room nurse testified that the child's bruises "were not of the same age." Given the mother's admission that she repeatedly stood Shannon up and knocked her down on the 22nd, with resulting bruises on her body, and the undisputed fact that the additional beating on the 23rd left her unconscious and near death, we believe a jury could properly find defendant guilty of aggravated battery of a child on both occasions.

We need not consider the alleged error in rejecting defense counsel's request for a jury instruction on the lesser included offense of simple battery, for the evidence of great bodily harm is so overwhelming that no rational jury, in our judgment, could have concluded that simple battery was an appropriate verdict on either of the two occasions. (See also *People v. Ward* (1984), 101 Ill. 2d 443, 451.) Any error was not prejudicial. Nor, since we believe, as hereafter discussed, that defendant is entitled to resentencing in light of the reversal of the attempted-murder convictions, is there any need to consider her contention that she was deprived of effective assistance of counsel at the sentencing hearing.

The defendant also submits, and the State concedes, that she was denied her right to effective representation in her appeal to the appellate court. The State argues, however, and we agree, that the appellate court carefully con-

sidered the case and compensated for counsel's inadequacy. Too, the fact that we allowed leave to appeal from the appellate court and have considered all arguments raised by the defendant's newly appointed counsel obviates any appellate-representation problems.

The defendant also urges this court to consider the overall behavior of defense counsel, specifically at the trial stage. She contends that his bizarre conduct and arguments denied her her constitutional right to counsel. The issue of incompetency of counsel is always to be determined from the totality of counsel's conduct. (See, *e.g., People v. Stewart* (1984), 101 Ill. 2d 470, 493.) A defendant, however, is entitled to competent, not perfect, representation (see, *e.g., Strickland; People v. Eddmonds* (1984), 101 Ill. 2d 44, 69), and we note, parenthetically, that most of the conduct complained of relates to pleadings or arguments before the court. The jury was not aware of such conduct. After a review of the entire record, including the specific areas discussed above, we are not persuaded that different counsel would probably have produced a different result (*Strickland, Albanese, Royse*) and conclude that defendant has failed to sustain her burden of establishing a deprivation of effective assistance of counsel.

Lastly, defendant argues that she is entitled to be resentenced in light of the appellate court's reversal of the attempted-murder convictions. The State had recommended a 30-year sentence on the attempted-murder convictions and 14 years on the aggravated-battery charges, urging the court to use the extended-term provisions of the statute (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—8—1, 1005—8—2). The trial judge did not adopt the attempted-murder recommendation, but specifically noted the exceptionally brutal or heinous behavior involved in the aggravated battery of a child and imposed the maximum term possible for those counts, including utilization of the extended-term provisions. He may, of course, wish to reim-

pose those sentences. But two convictions of the more serious Class X felonies of attempted murder have now been vacated, and in these circumstances we conclude that defendant is entitled to have her sentences reconsidered.

For these reasons, the judgment of the appellate court is affirmed insofar as it reversed the convictions and sentences on the attempted-murder counts and insofar as it affirmed the convictions on the aggravated-battery-of-a-child counts; the judgment of the appellate court is reversed insofar as it affirmed the sentences on the aggravated-battery-of-a-child counts. The judgment of the circuit court of Jackson County is reversed on the attempted-murder counts. The convictions for aggravated battery of a child are affirmed, but the sentences therefor are vacated, and this cause is remanded to the circuit court for resentencing on those counts.

> *Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded, with directions.*

JUSTICE SIMON, dissenting:

My colleagues' conclusion that the defendant received effective assistance of counsel in this case is baffling. This is not a case in which a defendant merely points to specific errors by her trial counsel and now claims that her attorney did not assist her effectively because his performance was less than perfect. The attorney who represented the defendant was transferred to inactive status by this court acting *sua sponte* on November 14, 1983, pursuant to our Rule 758, which authorizes such action when attorneys are incapacitated from continuing to practice law by reason of mental infirmity or mental disorder (87 Ill. 2d R. 758). As the majority notes, the State concedes that trial counsel provided ineffective assistance in this case. It seems incongruous to conclude that this defendant received effective assistance when the State admits that she did not and we

have declared that her attorney was too incapacitated to practice law.

The majority purports to apply *Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Interestingly, the majority quotes: "[T]he 'benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " 105 Ill. 2d at 11, quoting *Strickland v. Washington.*

The quotation conveys my point. When a defendant is represented by an incapacitated attorney, there can be no confidence in the result on the part of judge, jury, prosecutor, or defendant. The reliability of the trial is called so far into question that there is no way to know whether the trial produced a just result. If the right to trial is meaningless without the effective assistance of counsel (*Powell v. Alabama* (1932), 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55; *Gideon v. Wainwright* (1963), 372 U.S. 335, 344, 9 L. Ed. 2d 799, 83 S. Ct. 792), it is equally meaningless to say that such an important right can be protected by the participation of incapacitated counsel.

The majority mistakenly attempts to apply a two-step test which was enunciated by the Supreme Court in *Strickland* and adopted by this court (*People v. Albanese* (1984), 104 Ill. 2d 504). In most cases, the defendant alleging ineffective assistance of counsel must enumerate specific errors. The defendant must then demonstrate that (1) judged by an objective standard of reasonableness counsel's performance was incompetent, and (2) that defendant suffered prejudice as a result of counsel's incompetence, *i.e.*, that but for counsel's unprofessional errors there is a reasonable probability that the results of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

However, this case is different. The *Strickland* test is

based upon a presumption that counsel's behavior is rational. Starting from this presumption, one naturally reaches the conclusion that different counsel will approach a case via a number of different routes, and that it is not the duty of the courts after the fact to second-guess the trial strategies and tactics chosen by counsel. In any event, it is presumed that licensed counsel are competent, and there seems little point in overturning a verdict unless the defendant has suffered actual prejudice as a result of counsel's errors.

However, one does not reach the two-part *Strickland* test in cases in which the presumption does not apply. Since *Strickland* was a case in which the defendant alleged specific errors by counsel, there was no need for the court to elaborate on circumstances where there had been a constructive denial of counsel altogether.

The Supreme Court discussed this situation in more detail in another case decided on the same day as *Strickland (United States v. Cronic* (1984), 466 U.S. ___, 80 L. Ed. 2d 657, 104 S. Ct. 2039). In *Cronic*, the court could not find that there was ineffective assistance because no circumstances were alleged which indicated an actual breakdown of the adversarial process. The court noted that "[t]he right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." (466 U.S. ___, ___, 80 L. Ed. 2d 657, 666, 104 S. Ct. 2039, 2045.) *"[B]ecause we presume that the lawyer is competent* to provide the guiding hand that the defendant needs [citation], the burden rests on the accused to demonstrate a constitutional violation [citation]. There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." (Emphasis added.) 466 U.S. ___, ___, 80 L. Ed. 2d 657, 667, 104 S. Ct. 2039, 2046.

This is a case where the adversarial process broke

down. Attorneys are " 'necessities, not luxuries.' " (*United States v. Cronic* (1984), 466 U.S. ____, ____, 80 L. Ed. 2d 657, 664, 104 S. Ct. 2039, 2043, quoting *Gideon v. Wainwright* (1963), 372 U.S. 335, 344, 9 L. Ed. 2d 799, 805, 83 S. Ct. 792, 796.) The assistance of incapacitated counsel is tantamount to no assistance at all, and thus results in the constructive denial of counsel altogether. In such a case, there should be no requirement that the defendant must prove that he was prejudiced by the attorney's specific errors. Rather, there is a presumption that the assistance of counsel whom this court has found to be incapacitated is prejudicial.

In a case such as this one, there is no meaningful way of sorting out counsel's rational and irrational behavior in an attempt to determine whether the defendant was prejudiced by any of counsel's specific errors. The atmosphere of a fair trial has been poisoned, and there can be no confidence that the trial concluded in a just result. In some ways, the putative assistance of an incapacitated attorney may be worse than no assistance at all. This defendant placed herself in the hands of someone who cannot be presumed capable of rationally assessing a case, planning and executing a defense strategy, and behaving appropriately in court. The State concedes this, and it is because he lacked these capabilities that this court transferred the attorney in question to inactive status. Yet the defendant was unaware of any of this. She hired a licensed attorney who, because he was licensed by this court, she assumed was capable of protecting her rights as well as any other competent attorney. If she had had no attorney, she would have been on notice that she had to take steps to protect her rights. Instead, she was lulled into a sense of false security. This defendant had no way of recognizing her attorney's incapacity, and she should not be penalized for failing to secure different counsel. Her attorney appeared in court, he engaged in legalistic interchanges, and he might have ap-

peared to her, a 20-year-old woman, to be doing his job.

Although I have no doubt that there was a constructive denial of counsel in this case, and therefore find no need to ask whether the defendant was actually prejudiced, I also disagree with the conclusion of the majority that there was no actual prejudice in this case.

Another attorney might have found defenses on the facts of this case. The record reveals that there was originally a codefendant who was represented by separate counsel. Codefendant's counsel sought a competency examination in an attempt to establish an insanity defense. There may have been grounds for a similar defense here, but counsel never raised them. Counsel presented no defense. The pretrial record contains evidence that the codefendant admitted causing at least some of Shannon Mitchell's injuries, and that the codefendant gave two statements to the police. In the first, he claimed that the defendant played no part in the beatings or mistreatment of the child, and in the second, he assigned her only a limited role. Competent counsel might have found some way to use at least some of this information to construct a defense.

The record reveals an erratic and sometimes bizarre performance by counsel, both in and outside the presence of the jury. Many of counsel's arguments were irrelevant, repetitious, and impossible to follow. It is not possible to know exactly what effect all of this had on either the judge or the jury, but it is likely to have had some effect. While the jury may have been unaware that counsel did not conduct an effective cross-examination of one of the most important prosecution witnesses, the jury could not have helped but notice counsel's continual irrelevant references to justice of the peace courts, to citizen cooperation with the police, and to taxable costs. Defense counsel's rambling, discursive, and almost unintelligible closing argument, similar to incomprehensible briefs he filed in the ap-

pellate court and also to several petitions he filed in this court and which alerted us to his incapacity, could not have helped his client's cause.

The very fact that this effect is subtle makes it that much more dangerous. While both judge and jury were no doubt making every effort to be fair, they were laboring under the misconception that counsel was both rational and competent, and they necessarily judged counsel's behavior by the standards expected of the average, competent, rational attorney.

The State admits that counsel was incompetent. The record reveals that this trial cannot be characterized as a true adversarial proceeding, because defense counsel was not a competent adversary. Yet I must go beyond the record to complete my point. Counsel's obligations to the defendant do not begin and end in the courtroom. Counsel may also have been unable to adequately investigate his client's case, to uncover and interview witnesses, or to appreciate information provided by his client well enough to construct a plausible defense, but we have no way of knowing whether these omissions occurred. There is no doubt in my mind that the defendant in this case was appreciably prejudiced by the participation of incapacitated counsel. At the least, she should not have been found guilty without representation by counsel who was not incapacitated.

For the reasons stated above, I must therefore dissent.