THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAMON CANTU, Defendant-Appellant.

First District (4th Division)  No. 84—722

Opinion filed June 30, 1987.

Steven Clark and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan Cherry, James Fitzgerald, and John Lagattuta, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant Ramon Cantu was convicted of attempted murder (Ill. Rev. Stat. 1979, ch. 38, par. 8—4) and sentenced to 20 years' incarceration. Upon review, we conclude that the jury was erroneously instructed that it could find defendant guilty of attempted murder if the State's evidence proved beyond a reasonable doubt that defendant acted with knowledge that his acts would cause death or would create a strong probability of death or great bodily harm. As a result, we reverse defendant's conviction and remand for a new trial.

BACKGROUND

Evidence produced at trial established that on October 7, 1979, at approximately 9 p.m., Illinois State Trooper Donald Lange observed and pursued a Thunderbird automobile speeding southward down the Calumet Expressway. After being chased by Lange for about a mile and a half at high speed, the Thunderbird stopped on the right-hand side of the road. Lange stopped beyond the Thunderbird in the left-hand lane of traffic. A few seconds later, Lange heard a loud noise, looked at the Thunderbird, and saw a gun. He then saw a flash come out of the gun and the left, passenger-side window of his car shatter. The Thunderbird made a U-turn, passing nearby Lange, and proceeded north. Lange saw the driver of the automobile; it was the defendant. Illumination was provided by the Mars lights of Lange's car, and the headlights of oncoming traffic.

The Thunderbird travelled north and then pulled onto the side of the road. Lange and other State troopers arrived and surrounded the vehicle, but the driver had fled. Upon inspection, it was discovered

that three bullets had been fired into Lange's car, two into the Mars lights, and one through the side window.

Lange searched the Thunderbird. He found shells from a 30/30 caliber rifle and some papers belonging to the defendant. A few weeks after the incident, Lange identified the defendant in a lineup as the individual who had fired the shots at his squad car.

Of the numerous fingerprints found in the Thunderbird, half were identified as those of the defendant. A search of the wooded area near the location where the Thunderbird was abandoned led to the discovery of a 30/30 rifle. The spent cartridge shells recovered from the Thunderbird had been fired from the rifle. Defendant purchased the weapon in 1975.

Defendant's defense was alibi. He testified at trial, as did members of his family and others, that he had been bowling with family that day and was at home that evening when the incident occurred.

Defendant also testified that the Thunderbird belonged to his brother, Steven, and that defendant had been driving the car for several months. On the day in question, defendant drove the car to the bowling alley. Steven came to the bowling alley, talked to the defendant, and then left the premises. When defendant later left the bowling alley and found the car gone, he assumed that Steven, who also had keys to the car, had taken the automobile. When the defendant arrived home, he telephoned Steven, discovered that Steven had not taken the Thunderbird, and told Steven to report the car stolen.

The next day, Steven went to the police station to fill out a report that the vehicle had been stolen. While there, he told the police that his brother, the defendant, had admitted to Steven that the defendant had shot at a State trooper the night before while on the Calumet Expressway. Steven told the police that the defendant's admission had occurred during the course of their telephone conversation the night before. Steven gave a written statement to the police, in which he related defendant's admission of the shooting.

At trial, Steven denied that he had told the police that the defendant had admitted to Steven that the defendant had shot at a State trooper. He also testified that he did not read the written statement allegedly given to the police before he signed it, because he cannot read but can only sign his name. The State impeached these denials with Steven's written prior inconsistent statement.

The jury found the defendant guilty of attempted murder. Following a sentencing hearing, the trial court sentenced defendant to 20 years' imprisonment. Defendant now appeals.

Opinion

██ Defendant contends that error occurred when the jury was instructed that it could find him guilty of attempted murder if the State's evidence proved beyond a reasonable doubt that the defendant acted with knowledge that his acts would cause death or would create a strong probability of death or great bodily harm. We hold that the instructions were defective and mandate reversal of defendant's conviction and remand for a new trial.

The record shows that three instructions affecting the charge of attempted murder were given to the jury. First, the definitional attempted murder instruction:

"A person commits the crime of attempt, who with intent to commit the crime of murder does any act which constitutes a substantial step toward the commission of the offense of murder.

The offense attempted need not have been committed."

Second, the definitional murder instruction:

"A person commits the crime of murder who kills an individual if, in performing the acts which caused the death,

he intends to kill that individual; or

he knows that such acts will cause death to that individual; or

he knows that such acts create a strong probability of death to that individual."

Third, the attempted murder issues instruction:

"To sustain the charge of attempt, the State must prove the following propositions:

*First:* That the Defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and

*Second:* That the Defendant did so with the intent to commit the crime of murder.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty."

In *People v. Gentry* (1987), 157 Ill. App. 3d 899, the trial court gave jury instructions substantially similar to those at issue here. In finding that the instructions were erroneous, this court stated:

"Our supreme court has repeatedly held that a finding of specific intent to kill is a necessary element of the crime of attempted murder. (*People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343; *People v. Harris* (1978), 68 Ill. 2d 198, 369 N.E.2d 888.) Indeed, a trial court instructing a jury on the crime of attempted murder must make it clear that specific intent to kill is the pivotal element of that offense, and that intent to do bodily harm, or knowledge that the consequences of defendant's act may result in death or great bodily harm, is not enough. (*People v. Jones* (1979), 81 Ill. 2d 1, 8-9, 405 N.E.2d 343, 346. Accord, *People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270; *People v. Barker* (1980), 83 Ill. 2d 319, 415 N.E.2d 404; *People v. Coleman* (1985), 131 Ill. App. 3d 76, 475 N.E.2d 565.) Recently, in *People v. Kraft* (1985), 133 Ill. App. 3d 294, 478 N.E.2d 1154, this court found an identical instruction to be erroneous based on the legal principle cited above. Accordingly, the instructions given in this case were erroneous, since it is clear that the jury was permitted to convict [defendant] without specifically finding that [he] intended to kill [the victim]. Few errors are more highly prejudicial than the trial court's failure to give the proper instruction on the intent element of a crime. *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861." 157 Ill. App. 3d at 899.

Based upon this reasoning, we determine that the instructions given here are as infirm as those at issue in *Gentry* and require reversal of defendant's conviction and remand for a new trial.

The State maintains that the instructions, even if erroneous, did not result in reversible error. It urges that because defendant's defense was alibi, his mental state was not in issue at trial. We find the State's reasoning without merit. In the instant cause, the evidence "either [is] unclear as to the formation of intent or demonstrate[s] a lack of intent"; the defendant's intent to commit murder here is not "blatantly evident from the circumstances." *People v. Jones* (1980), 81 Ill. 2d 1, 10, 405 N.E.2d 343, 347; see also *People v. Gentry* (1987), 157 Ill. App. 3d 899.

■ For example, in *Jones*, the Illinois Supreme Court found that error in the jury instructions regarding attempted murder was harmless, because the evidence demonstrated that "[t]he victim was shot four times in the head, peppered with buckshot in his back, and had a shotgun pointed at him by the defendant." (*People v. Jones* (1980), 81 Ill. 2d 1, 10, 405 N.E.2d 343, 347.) Here, in comparison, the apparent intended victim, Trooper Lange, was not injured by gunshot or any

other form of attack. We also observe that when the driver of the Thunderbird made a U-turn in sufficient proximity for Lange to be able to positively identify him, the driver did not attempt to fire or point a gun at Lange. On these facts, we cannot find the State's proof of defendant's intent to kill so blatant that error in the jury instructions regarding attempted murder could be deemed harmless.

■ Defendant also contends that the State failed to prove him guilty of attempted murder beyond a reasonable doubt. We have closely reviewed the record and determine that proof of defendant's guilt of attempted murder was not so improbable or unsatisfactory that the jury's verdict should be disturbed on this basis. See, *e.g.*, *People v. Byron* (1987), 116 Ill. 2d 81, 89-90, 506 N.E.2d 1247.

In closing, we note that we have appellate jurisdiction to consider the merits of defendant's appeal. See, *e.g.*, *People v. Mims* (1980), 82 Ill. 2d 63, 65-66, 411 N.E.2d 215; *People v. Jacobs* (1975), 61 Ill. 2d 590, 592, 338 N.E.2d 161; *People v. Brown* (1973), 54 Ill. 2d 25, 26, 294 N.E.2d 267.

In view of these dispositions, we need not consider the remaining questions raised herein.

For the reasons stated, the judgment of the circuit court is reversed and the cause remanded for a new trial.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.