THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES MOORE, Defendant-Appellant.

First District (1st Division)   No. 1—85—0628

Opinion filed December 31, 1990.

Law Offices of Jeffrey A. Kripton, Ltd., of Des Plaines (Jeffrey A. Kripton, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Kenneth T. McCurry, Vickie E. Voukidis, and LaCoulton Walls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

The defendant, James Moore, was charged by indictment on January 24, 1984, with the offenses of attempted murder (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 9—1), aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)), aggravated battery to a child (Ill. Rev. Stat. 1981, ch. 38, par. 12—4.3(a)), and cruelty to children (Ill. Rev. Stat. 1981, ch. 23, par. 2368). Following a jury trial, defendant was found guilty of all

charges and sentenced to two concurrent 22-year terms in the Illinois Department of Corrections. Patricia Moore was also indicted for the same offenses. However, her case was disposed of on January 9, 1985, after her guilty plea was accepted by the trial court.

Christine Kasik, a children's welfare attendant for the Chicago Board of Education, responsible for transporting handicapped children to school, testified that on January 13, 1984, as she approached the intersection of Washington and Kilpatrick, she noticed a half-naked child wearing only jeans standing in the snow. As Ms. Kasik approached the child (later determined to be eight-year-old Quantria Moore), she noticed that the child's face, chest and arms were covered with blood. The child was also unsteady on her feet. Ms. Kasik wrapped the child in a scarf and assisted her onto the bus. When Ms. Kasik returned to the bus garage, she instructed the dispatcher to call the police and proceeded to wipe the blood from Quantria's body.

LaShawn Amos, the next door neighbor of the Moores', testified that on January 13, 1984, while taking garbage out of her back door, she noticed a little girl (later identified as six-year-old Shana Moore) lying facedown in the snow wearing only a pair of panties and one shoe. She went back into her apartment, called the police and returned outside. When she picked up Shana to carry her into the apartment, she noticed that Shana was unconscious and her eyes appeared to roll to the back of her head. She further noticed blood frozen to Shana's mouth. Thereafter, the paramedics arrived and Shana was taken to the hospital.

Dr. Lee Major testified that he treated both Quantria and Shana at St. Anne's Hospital on January 13, 1984. Shana suffered severe hypothermia and was placed on a heart machine. Quantria suffered a broken jaw, lacerated tongue and separated teeth.

Officer James Carter testified that on January 13, 1984, he and Officer Charles Sisler responded to an unrelated call at 4708 West Washington. While there, they spoke to LaShawn Amos about the child found unconscious in the snow. Upon learning of the observations of Ms. Amos, they went to the defendant's apartment on the third floor. The defendant let the police in, but when questioned about his children, he denied having any children. On further questioning he admitted having children but claimed that he did not know the whereabouts of his children. The defendant and his wife Patricia Moore were then arrested.

Detective Angelo Rinchiuso testified that on January 13, 1984, he was assigned to investigate this case. During the course of his investigation he interviewed Christine Kasik and LaShawn Amos prior to speaking with the defendant. He read the defendant his *Miranda* rights, and the defendant stated that he understood those rights. Detective Rin-

chiuso further testified that during this interview, the defendant was not handcuffed because he was not giving him any trouble. Detective Rinchiuso stated that the defendant told him that on January 13, 1984, he and his wife used some cocaine and had taken codeine cough syrup. Thereafter, they had an argument and he and his wife each took an arm and leg, first of Shana, then Quantria, and threw each of them off the back porch. The defendant explained to Detective Rinchiuso that they did this to the children because they were "high." Detective Rinchiuso then called Assistant State's Attorney Lester Joseph, who also interviewed the defendant. Detective Rinchiuso and Joseph subsequently went to St. Anne's Hospital and interviewed Quantria Moore.

Former Assistant States Attorney Lester Joseph (a Department of Justice lawyer at the time of the trial) testified that on January 13, 1984, he was assigned as an assistant State's Attorney, felony review unit. He was assigned to handle this case. He initially spoke with Detectives Rinchiuso and McCorkle and other witnesses about the case. Then he went to the hospital to see the children. When he interviewed the defendant after reading him his *Miranda* rights, the defendant restated what he had previously told the detectives. Joseph wrote down the details of the incident as it was told to him by the defendant. The defendant read the written statement with Joseph, confirmed its correctness and signed the document.

Prior to trial the defendant filed a motion to suppress the statement, alleging that he was under the influence of alcohol and drugs which rendered him incapable of giving a voluntary confession. During the evidentiary hearing on the motion, the State presented the testimony of four witnesses, *i.e.*, Officer James Carter, Officer Charles Sisler, Detective Rinchiuso and former Assistant State's Attorney Lester Joseph, who at the time of the occurrence was on duty in the felony review unit of the State's Attorney's office and was assigned to the case at bar. Each of these witnesses attested to the defendant's calm demeanor immediately before he made a statement regarding the incident. Officers Carter and Sisler confronted the defendant at his home, and they both testified to his lucidity during the colloquy that occurred prior to defendant being taken into custody. Likewise, Rinchiuso and Joseph testified about their respective observations before and during the taking of the statement at Area 4 headquarters. Defendant introduced the testimony of Dr. Stanley Harper, a board-certified family practitioner, who had examined him on January 15, 1984, while he was in custody. Dr. Harper concluded that the defendant was showing psychotic behavior which was manifested by his extreme agitation, incoherence, violence and combativeness. As a result, upon completion of the exami-

nation, Dr. Harper ordered leather restraints for the defendant for 12 hours and a series of blood tests. He also concluded that defendant's behavior was drug related, and he found it difficult to believe that the defendant would have given the lucid statement described by the State's witnesses. He based that conclusion on opinions rendered by two psychiatrists whose reports he utilized in his analysis of defendant's condition, and on defendant's behavior of January 15, 1984, two days after the occurrence. Dr. Harper conceded on cross-examination that it is possible for a person to purposely act in a violent and agitated manner. He further testified that he had not recalled that the same two psychiatrists who examined the defendant had also concluded that defendant was a malingerer and a habitual liar.

Mary Moore, the defendant's mother, testified that her son visited her two days before his arrest. During that visit, he acted in a very bizarre manner, i.e., made animal sounds, did not recognize her, called her a witch and slapped her.

The trial court determined that defendant's statements were given voluntarily and denied defendant's motion to suppress his custodial statements. The jury then heard the evidence and after deliberation found the defendant guilty of all charges. At the sentencing hearing the defendant's motion for a new trial was denied. The defendant was sentenced to serve two concurrent 22-year terms of imprisonment in the Illinois Department of Corrections.

We must initially determine whether the trial court properly denied defendant's motion to suppress his statements. Defendant argues that the trial court erred in failing to suppress his custodial statements based on the defendant's drug-intoxicated condition and psychotic behavior. Defendant asserts that the trial court had the written opinions of two psychiatrists which indicated defendant's possible psychosis at the time the offense was committed as a result of his voluntary drug ingestion. Moreover, Dr. Harper testified that the defendant was psychotic when he was received in Cook County jail due to drug abuse. The State argues that the testimony of Dr. Harper did not support the defendant's position that he was intoxicated at the time the statements were made since Dr. Harper was not with the defendant at the time of arrest or at the time of the making of the statement to observe the defendant's calm demeanor. Moreover, Dr. Harper's interview did not occur until two days after the statement was made and he testified that it was possible that the defendant was faking his psychotic symptoms when he examined him. The State asserts that the same reports that Dr. Harper used to form his opinion regarding defendant's psychosis include opinions that defendant was a malingerer and a liar.

■ The voluntariness of a statement after a drug has been administered is a question to be decided by the trial court upon a motion to suppress. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 117, 429 N.E.2d 508.) Moreover, it is well settled that depending upon the totality of the circumstances, a trial court's finding that the statement was voluntarily made will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*People v. Evans* (1988), 125 Ill. 2d 50, 77, 530 N.E.2d 1360; *People v. Rogers* (1988), 123 Ill. 2d 487, 495, 528 N.E.2d 667, *cert. denied* (1989), 488 U.S. 1046, 102 L. Ed. 2d 1001, 109 S. Ct. 878; *People v. Gacho* (1988), 122 Ill. 2d 221, 237, 522 N.E.2d 1146; *People v. Clark* (1986), 114 Ill. 2d 450, 457, 501 N.E.2d 123.) However, it is the State's burden to establish that a statement was knowingly, intelligently and voluntarily made. *Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628; *Kincaid*, 87 Ill. 2d at 116.

■ In considering whether the defendant's confession was voluntary, we must determine whether his will was overborne at the time he confessed. (*Kincaid*, 87 Ill. 2d at 117; *Townsend v. Sain* (1963), 372 U.S. 293, 307, 9 L. Ed. 2d 770, 782, 83 S. Ct. 745, 754.) A confession is not automatically inadmissible merely because the accused is under the influence of drugs when the confession is made. *Kincaid*, 87 Ill. 2d at 119.

In the instant case the record reveals that several witnesses observed the defendant's calm demeanor just prior to defendant making his statements. Moreover, the defendant's actions on the day the crime was committed do not support his intoxication defense. The evidence reveals that the defendant was very lucid before, during and after the commission of the offense. Specifically, the defendant provided Detective Rinchiuso and Assistant State's Attorney Lester Joseph with detailed information as to what occurred on January 13, 1984.

Detective Rinchiuso testified that, after the defendant was read his *Miranda* rights, he stated that he understood those rights and proceeded to explain what happened on January 13, 1984. Defendant stated that his children had not attended school that day and he and his wife had used cocaine and taken codeine cough syrup. Thereafter, they had an argument, and he and his wife each took an arm and leg of first Shana, then Quantria, and threw each of them off the back porch. The defendant explained to Detective Rinchiuso that they did this to the children because they were "high." Detective Rinchiuso further testified that during this interview, the defendant was not handcuffed because he was not giving him any trouble. He stated that the defendant did not display any inappropriate behavior. Moreover, on January 13, 1984, while being interviewed by Assistant State's Attorney Lester Joseph,

assigned to the felony review unit, the details of the incident were recited by defendant, put in writing by Joseph, and the defendant read the statement with Joseph, confirmed its correctness and signed the document. Joseph testified that the defendant was calm and cooperative during the interview. Additionally, Officer James Carter testified that when he and Officer Charles Sisler arrived at defendant's apartment, he was lucid enough to fabricate a story by initially denying that he had any children. However, after the officers questioned him further about the pictures of the children on the mantle, he admitted that those were pictures of his children but stated that he did not know the whereabouts of his children. The defendant was quickly able to change his story to conform to the obvious evidence. Both Officer Carter and Officer Sisler stated that the defendant calmly responded to their questions and did not reveal any manifestations of violence. It is unlikely that a person whose will was overborne would be able to fabricate a story about his children and instantaneously change his story in response to a specific question in order to tailor his response to the evidence.

The aformentioned acts are not the acts of a person whose will was overborne. Nor do they support a claim that the defendant was so mentally impaired that all reason was suspended or that he was incapable of acting knowingly. To the contrary, the evidence reveals that the defendant acted knowingly and intentionally. (See *People v. Hayes* (1988), 173 Ill. App. 3d 1043, 1048, 527 N.E.2d 1342; *People v. Terry* (1987), 154 Ill. App. 3d 162, 166, 506 N.E.2d 786.) We, therefore, conclude that based on the totality of the circumstances, the finding by the trial court that the defendant's statements were knowingly and voluntarily made is not against the manifest weight of the evidence.

Defendant next contends that he was denied his sixth amendment right to the effective assistance of counsel when his trial counsel failed to submit any evidence or testimony to support his intoxication defense. Generally, in order for a defendant to succeed on an ineffective assistance of counsel claim, he must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Moreover, counsel's performance does not constitute ineffective assistance unless it is shown that the performance so prejudiced the defense of the case that the defendant was denied a fair trial. *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692, 104 S. Ct. at 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1120, 86 L. Ed. 2d 267, 105 S. Ct. 2368.

In determining whether a defendant has been prejudiced, "defendant must show that there is a reasonable probability that, but for coun-

sel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *Albanese*, 104 Ill. 2d at 525.) Furthermore, a totality of the evidence presented to the trier of fact must be considered when a court makes its determination that a reasonable probability exists that but for counsel's errors the result of the proceedings would have been different. *People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1083, 518 N.E.2d 669; *People v. Wilson* (1986), 149 Ill. App. 3d 1075, 1077-78, 501 N.E.2d 863.

The *Strickland v. Washington* court further concluded that it is unnecessary for courts to determine whether counsel's performance was deficient before analyzing the prejudice suffered by the defendant as a result of the alleged deficiencies. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Enoch* (1988), 122 Ill. 2d 176, 201, 522 N.E.2d 1124, 1137.) Moreover, the Illinois Supreme Court has recently held that in order for a defendant to establish prejudice, he must demonstrate, "not simply a possibility of prejudice, but that the claimed error worked to his actual and substantial disadvantage." (*People v. Owens* (1989), 129 Ill. 2d 303, 318, 544 N.E.2d 276.) It is well settled that defendant is entitled to competent, not perfect, representation and mistakes concerning trial strategy, tactics or judgment do not render counsel's representation incompetent. *People v. Hillenbrand* (1988), 121 Ill. 2d 537, 548, 521 N.E.2d 900; *People v. Stewart* (1984), 104 Ill. 2d 463, 492, 473 N.E.2d 1227, *cert. denied* (1985), 471 U.S. 1120, 86 L. Ed. 2d 267, 105 S. Ct. 2368; *People v. Mitchell* (1984), 105 Ill. 2d 1, 12, 473 N.E.2d 1270.

In reviewing counsel's representation, we initially look to the existence of prejudice to determine if defendant was deprived of his constitutional right to the effective assistance of counsel. Defendant argues that trial counsel failed to present any evidence to support his intoxication defense. However, in examining the totality of defense counsel's representation, we note that before the trial, counsel moved to suppress defendant's statements alleging that he was under the influence of alcohol and drugs at the time the statement was allegedly made. Moreover, during the suppression hearing, Dr. Stanley Harper, who had examined the defendant on January 15, 1984, testified that the defendant was showing psychotic behavior which the doctor believed to be drug related. However, on cross-examination he acknowledged that it was possible for a person to purposely act in a violent and agitated manner. Why counsel chose not to call Dr. Harper at trial is not clear from the trial record; however, we fail to see how defendant was prejudiced thereby. Clearly,

we do not have a situation where defense counsel neglected to investigate a potential defense. Counsel's diligence in connection with the possible defense of intoxication is illuminated by the fact that he was aware of Dr. Harper's role in examining defendant and was aware of what his testimony would have been at trial since he subpoenaed him for and examined him at the suppression hearing. It is logical to infer that it was a matter of trial strategy that caused him to decline to take further steps to bring him in as a trial witness. Counsel was confronted with the conflicting opinions of two other expert witnesses who could have been called in rebuttal to testify to defendant's malingering. In addition, the State's law enforcement witnesses, *i.e.*, police officers and felony review assistant State's Attorney, did dispute defendant's contention regarding his mental state on the date of the occurrence. Moreover, defense counsel was cognizant that Dr. Harper had conceded at the suppression hearing that defendant could have been malingering and there is no reason to believe that this testimony would differ at trial. He was also aware that Dr. Harper had previously testified that while he did render an opinion regarding defendant's mental state on January 15, 1984, the doctor acknowledged that he had insufficient information upon which to render such an opinion.

The record does reflect a colloquy that established that Dr. Harper was under subpoena, but unavailable on the day of the trial. However, counsel properly requested a continuance which the court granted. While the trial record is confusing regarding what occurred subsequently in having Dr. Harper testify at trial, it is clear that counsel rested without offering any witnesses.[1] Therefore, the defendant has failed to show that the outcome of the trial would have been different had Dr. Harper testified. Furthermore, the defendant has failed to meet his burden of demonstrating that a reasonable probability existed that but for trial counsel's errors, the result of the proceeding would have been different. Defense counsel's decision not to present the testimony of additional witnesses involved the exercise of judgment and trial strategy. As previously noted, trial strategy is an insufficient basis to justify a finding of ineffective assistance of counsel. The record does not show that counsel's performance fell below

[1]The transcript shows that the court granted the continuance to either bring in Dr. Harper the following Wednesday or to consider admitting his suppression testimony if he was yet unavailable. However, the transcript, in a very confusing colloquy, further reveals that the case actually resumed the Monday preceding the agreed-upon Wednesday date at which time both sides rested, the defense offering no evidence. If a discussion occurred off the record changing the agreed-upon strategy, the record is silent and offers no guidance regarding it.

an objective standard of reasonableness. Nor does the record reveal that defendant was prejudiced by trial counsel's failure to further pursue his voluntary intoxication defense, and the defendant has failed to state what additional evidence of intoxication could have been presented to support his intoxication defense. Accordingly, defendant's argument that he was denied the effective assistance of counsel must fail.

■ Defendant next contends that the State failed to prove beyond a reasonable doubt that he had the mental capacity to commit the crimes for which he was charged since they were specific intent crimes. Defendant correctly asserts that the prosecution has the burden of establishing that he intended to kill the children. (*Mitchell*, 105 Ill. 2d at 9; *People v. Treadway* (1985), 138 Ill. App. 3d 899, 902, 486 N.E.2d 929.) However, it should be noted that the State has the burden of proving the defendant guilty beyond a reasonable doubt, not beyond any possible doubt. (*People v. Madej* (1985), 106 Ill. 2d 201, 218, 478 N.E.2d 392.) It is well settled that the specific intent to kill may be inferred from the surrounding circumstances, including the character of the assault upon the victim and other relevant matters. *Treadway*, 138 Ill. App. 3d at 902; *Mitchell*, 105 Ill. 2d at 9; *People v. Ruiz* (1982), 94 Ill. 2d 245, 263, 447 N.E.2d 148.

■ After carefully reviewing the record, we find that the same evidence which established that the defendant's confession was voluntary also establishes that the defendant was proven guilty of the crimes charged beyond a reasonable doubt. The evidence revealed that the defendant voluntarily provided a detailed explanation of how he and his wife each took an arm and leg, first of Shana, then Quantria, and threw them from the third floor, a distance of approximately 30 to 50 feet. This was unlike the situation in *Mitchell*, wherein the defendant's attempted murder conviction was reversed because the requisite intent was not established. In that case, the defendant repeatedly struck her child, and when the child lost consciousness, the defendant applied a cool cloth and proceeded to take the child to the hospital for emergency medical attention. (*Mitchell*, 105 Ill. 2d at 9.) In the case at bar, the surrounding circumstances show that after the children were thrown from the third-floor porch, the defendant did not offer any assistance. Instead, eight-year-old Quantria wandered into the intersection of a busy street covered with blood, half-naked in the snow wearing only jeans. Moreover, six-year-old Shana was found by a neighbor lying facedown in the snow, unconscious with her eyes rolled to the back of her head and wearing only a pair of panties and one shoe. In view of the defendant's confession and the surrounding

circumstances, we find the defendant's guilt was established beyond a reasonable doubt.

Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.